Opinion issued June 25, 2009


















 

 



 





In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-08-00966-CV

____________


EAST HOUSTON ESTATE APARTMENTS, L.L.C., Appellant


V.


CITY OF HOUSTON, Appellee






On Appeal from the 333rd District Court

Harris County, Texas

Trial Court Cause No. 0758763






O P I N I O N


 The appellant, East Houston Estate Apartments, L.L.C. ("East Houston"),
appeals the trial court's order sustaining the plea to the jurisdiction of appellee,
City of Houston ("the City"). (1)
 In one issue, East Houston argues that the trial court
erred in granting the City's plea to the jurisdiction because the City performed a
proprietary act by entering the agreement with East Houston, or, alternatively, that
the City's governmental immunity is waived by Texas Local Government Code
section 271.152. (2)

 We affirm.

Background

 On August 6, 1996, East Houston entered into a loan agreement with the
City. The loan agreement provided:

 This Agreement provides for a Loan . . . from the City to the
Owner to assist in the rehabilitation of a 130 unit apartment complex
located at 7600 East Houston Road, Houston, Harris County, Texas,
and known as the East Houston Estate Apartments. Funding is being
provided to the City pursuant to a HOME Investment Partnership
Agreement ("HOME Agreement") between the City and the United
States of America, acting by and though its Department of Housing
and Urban Development, for federal funding of a HOME Investment
Partnerships Program under the National Affordable Houston Act of
1990, as amended ("HOME Program").

 The Loan shall be issued to the Owner from the City subject to
the conditions and terms of this Agreement. This Loan Agreement
covers a community development activity undertaken by the City and
authorized under Chapter 373 and/or 374 of the Texas Local
Government Code.


The Agreement also stated "Loan shall mean the loan contemplated by this
Agreement, in the maximum principal amount of Seven Hundred Fifty Thousand
and No/100 Dollars ($750,000.00) made by the City to the Owner for the purpose
of financing a portion of the rehabilitation costs of the Project." To accompany the
Loan Agreement, East Houston executed a promissory note naming the City as
payee in the principal sum of and a "Deed of Trust, Security Agreement, and
Financing Statement." The Loan Agreement further provided that East Houston
must "execute an agreement with a Project Manager who has been approved by the
Director [of the City's Department of Housing and Community Development or
designee]" before the funds could be disbursed.

 The Loan Agreement also required that East Houston "obtain a firm
commitment" from another lender, who would act as the Senior Lender, "for
financing a portion of the acquisition and construction of the Project in at least the
amount of $1,167,070.00." Thus, also on August 6, 1996, East Houston entered
into a loan agreement with Chase Bank of Texas, N.A. ("Chase Bank"), and Chase
Bank and the City entered into an inter-creditor agreement acknowledging Chase
Bank as the Senior Lender. 

 Among the "Covenants of the Owner" were requirements that East Houston
"use the proceeds of the Loan only for items included in the Final Budget that has
been approved by the Director," deadlines for the commencement and completion
of work, the requirement that the owner "perform the Work in a good and
workmanlike manner and in substantial accordance with the Work Write-up that
has been approved by the Director," and requirements that East Houston comply
with various other statutory provisions and regulations and with certain
"affordability requirements." Specifically, the Agreement provided:

[T]he Owner shall comply with the following affordability
requirements:

a. At least twenty percent (20%) of the sixty-six (66) Designated
Units, i.e., at least thirteen (13) units, shall be rented only to
those families whose gross income does not exceed fifty
percent (50%) of the median income for the area, as determined
by HUD, and each of these thirteen (13) or more units shall
bear rent no greater than thirty percent (30%) of the adjusted
income of the qualified tenant family, less a monthly allowance
for utilities and services (excluding telephone) to be paid by the
tenant.


b. The remaining Designated Units shall be rented only to those
families whose gross income does not exceed eighty percent
(80%) of the median income for the area, as determined by
HUD, and these units shall bear rents no greater than the lesser
of--


 (1) the fair market rent for comparable existing housing units
in the area as established by HUD under 24 CFR
§ 888.111, less a monthly allowance for any utilities and
services (excluding telephone) to be paid by the tenant;
or


 (2) a rent that does not exceed thirty (30%) percent of the
adjusted income of a family whose gross income equals
sixty-five percent (65%) of the median income for the
area, as determined by HUD, with adjustments for the
number of bedrooms in the unit, less a monthly
allowance for utilities and services (excluding telephone)
to be paid by the tenant.


The Loan Agreement also contained numerous provisions regarding repayment of
the loan and disbursement procedures and circumstances under which the Director
could declare a default under the loan.

 The Loan Agreement provided that the Affordability Period--i.e., the period
during which the designated units of the Project had to remain affordable under
HUD standards--was fifteen years from Project Completion and that the
"Designated Units for the Project covered by this Agreement shall consist of 51%
of the units (66 units)." (3) In addition, the Loan Agreement contained a section titled
"Federal Funding Limitation" that stated as follows:

 Owner understands that the availability of the Loan proceeds is
dependent upon federal funding. Unless and until the City receives
adequate funds from HUD, the City shall have no obligation to the
Owner under this Agreement. In the event that the funds received by
the City under the HOME Agreement with HUD are insufficient to
meet the City's commitments, the Director may reallocate all or a
portion of the funds that are budgeted for this Agreement. The Loan Agreement was approved and authorized by City Ordinance 98-126 on February 18, 1998. Subsequently, work on the Project began.

 After numerous construction delays, Chase attempted to foreclose on East
Houston's property on August 11, 2003. At that time, according to East Houston,
the City had loaned East Houston approximately $237,000 of the $750,000 in
federal funds provided for in the Loan Agreement, and Chase Bank, as the Senior
Lender, had loaned East Houston approximately one-third of the $1,167,070.00
provided for in its own loan agreement with East Houston for the Project. East
Houston had not repaid any of the money Chase Bank and the City had lent it for
the Project. On August 29, 2003, East Houston filed a Chapter 11 bankruptcy
proceeding that was eventually dismissed. No action was taken under the loan
agreements for several years.

 On May 11, 2007, East Houston Apartments, L.L.C. ("EHA") purchased
Chase Bank's position in Chase's loan agreement with East Houston and posted
East Houston's real property for foreclosure. East Houston filed another
bankruptcy proceeding on July 2, 2007. On September 10, 2007, the bankruptcy
court lifted the stay to allow EHA to enforce its rights through foreclosure. 
Subsequently, EHA sold East Houston's property at foreclosure on October 2,
2007. East Houston filed its original petition in this lawsuit on September 9, 2008,
alleging breach of contract by Chase Bank and the City for failing to release to it
all of the funds allotted by the loan agreements. East Houston alleged damages "in
an amount equal to the estimated value of the property being at least $2,000,000.00
along with lost net income of at least $300,000 per year for the twenty-year period
that the real estate project had to be used for low income housing, for an aggregate
lost profits claim of $6,000,000.00." East Houston also alleged fraud, rescission
and setoff, and civil conspiracy, and it requested punitive damages of
$6,000,000.00 and attorney's fees. In its first amended petition, East Houston
argued that the City had waived its immunity from suit because the acts or
omissions that formed the basis of the lawsuit involved proprietary acts of the City
for which it did not have governmental immunity.

 On October 8, 2008, the City filed a plea to the jurisdiction arguing that,
because the Loan Agreement between itself and East Houston covered a
Community Development Activity authorized by Chapter 373 or Chapter 374, or
both, of the Texas Local Government Code, (4) and because such activity was
statutorily defined as a governmental function, the City was immune from suit for
all claims arising out of that activity.

 On October 28, 2008, East Houston responded to the City's plea to the
jurisdiction, arguing that Community Development Activities authorized by
Chapters 373 or 374 of the Local Government Code are proprietary activities of a
municipality and also that the City had failed to prove that the Loan Agreement
was properly authorized under Chapter 373 or 374, and, therefore, the City's
immunity from suit was waived. Alternatively, East Houston argued that the City's
immunity was waived under Texas Local Government Code section 271.152,
which waives governmental immunity from suit for breach of certain contracts
entered into by a governmental entity. (5) On October 29, 2008, East Houston filed
its second amended petition, adding its argument that the City's immunity from
suit was waived by Local Government Code section 271.152 and acknowledging
that its damages against the City would be correspondingly limited by that statute. 
East Houston also added causes of action for negligence, tortious interference with
prospective relations, breach of the covenant of good faith and fair dealing,
violations of the Deceptive Trade Practices Act, and retaliation and harassment. 
On October 30, 2008, the City filed its reply to East Houston's response to its plea
to the jurisdiction.

 The trial court held a hearing on the City's plea to the jurisdiction on
October 31, 2008. On November 11, 2008, the trial court signed the order
sustaining the City's plea to the jurisdiction and dismissing all of East Houston's
claims against the city for want of jurisdiction.

Plea to the Jurisdiction

In its sole issue, East Houston argues that the trial court erred in sustaining
the City's plea to the jurisdiction based on governmental immunity to East
Houston's breach of contract suit because the City's contract with East Houston
constituted a proprietary act of the City. Alternatively, East Houston argues that
the City is not immune from suit on East Houston's breach of contract claim
because the City's immunity is waived by Texas Local Government Code section
271.152.

A. Standard of Review

 A plea to the jurisdiction challenges the trial court's subject matter
jurisdiction to hear the case. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554
(Tex. 2000). Subject matter jurisdiction is essential to the authority of a court to
decide a case and is never presumed. Tex. Ass'n of Bus. v. Tex. Air Control Bd.,
852 S.W.2d 440, 443-44 (Tex. 1993). The plaintiff has the burden to allege facts
affirmatively demonstrating that the trial court has subject matter jurisdiction. Id.
at 446.

 The existence of subject matter jurisdiction is a question of law. State Dep't
of Highways & Pub. Transp. v. Gonzalez, 82 S.W.3d 322, 327 (Tex. 2002). 
Therefore, we review the trial court's ruling on a plea to the jurisdiction de novo. 
Id. When a plea to the jurisdiction challenges the existence of jurisdictional facts,
the trial court must consider relevant evidence submitted by the parties. Tex. Dep't
of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 228 (Tex. 2004). If the evidence
creates a fact question regarding jurisdiction, the trial court cannot grant the plea to
the jurisdiction, and the fact issue will be resolved by the fact-finder; however, if
the relevant evidence is undisputed or fails to raise a fact question on the
jurisdictional issue, the trial court rules on the plea as a matter of law. Id. at
227-28. In deciding a plea to the jurisdiction, a court may not consider the merits
of the case, but only the plaintiff's pleadings and the evidence pertinent to the
jurisdictional inquiry. County of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex.
2002). In conducting our review, we take as true all evidence favorable to the
nonmovant and indulge every reasonable inference and resolve any doubts in the
nonmovant's favor. Miranda, 133 S.W.3d at 228.



B. Waiver of Immunity for Proprietary Act

 Governmental immunity has two components--immunity from liability and
immunity from suit. Tooke v. City of Mexia, 197 S.W.3d 325, 332 (Tex. 2006). A
unit of state government is immune from suit and liability unless the state consents. 
Tex. Dep't of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999). A governmental
entity that enters into a contract waives immunity from liability and voluntarily
binds itself to the contractual terms, but the entity does not thereby waive
immunity from suit. Id.; Seureau v. ExxonMobil Corp., 274 S.W.3d 206, 215
(Tex. App.--Houston [14th Dist.] 2008, no pet.). Here, both parties agree that the
issue is whether the City is immune from suit for breach of contract.

 Immunity from suit bars a suit against a governmental entity unless the
Legislature expressly consents to the suit by resolution or by clear and
unambiguous statutory language. Tooke, 197 S.W.3d at 332-33. The party suing a
governmental entity must establish the State's consent to suit by reference to a
statute or to express legislative permission. Gilford, 277 S.W.3d at 69 (citing Mo.
Pac. R.R. Co. v. Brownsville Navigation Dist., 453 S.W.2d 812, 814 (Tex. 1970)). 
A governmental entity's immunity can be waived only through the use of clear and
unambiguous language. Brown, 80 S.W.3d at 554; Univ. of Tex. Med. Branch v.
York, 871 S.W.2d 175, 177 (Tex. 1994).


 1. Proprietary Act

 East Houston argues that the City is not immune from suit because its act in
entering the Loan Agreement for the Project was proprietary rather than
governmental as the City argues.

 In the tort context, cases involving claims against a city begin by considering
whether the city was acting in a proprietary or governmental function. The City of
Houston v. Petroleum Traders Corp., 261 S.W.3d 350, 355 (Tex. App.--Houston
[14th Dist.] 2008, no pet.); see also Tooke, 197 S.W.3d at 343 ("The proprietary-governmental dichotomy has been used to determine a municipality's immunity
from suit for tortious conduct.") (emphasis added). "[G]enerally speaking, a
municipality's proprietary functions are those conducted 'in its private capacity,
for the benefit only of those within its corporate limits, and not as an arm of the
government,' while its governmental functions are 'in the performance of purely
governmental matters solely for the public benefit.'" Tooke, 197 S.W.3d at 343
(quoting Dilley v. City of Houston, 222 S.W.2d 992, 993 (Tex. 1949)). 
Governmental entities are immune from suit for torts committed in the
performance of its governmental functions--not for those committed in the
performance of a proprietary function. Id. (citing City of Tyler v. Likes, 962
S.W.2d 489, 501 (Tex. 1997) and Dilley, 222 S.W.2d at 993-94) (emphasis
added).

 The Texas Supreme Court has never expressly held that this distinction
between governmental and proprietary functions applies in the context of a claim
for breach of contract. See Tooke, 197 S.W.3d at 343 & n.89 ("[W]e have never
held that this same distinction determines whether immunity from suit is waived
for breach of contract claims, and we need not determine that issue here.") (citing
Gates v. City of Dallas, 704 S.W.2d 737, 738-39 (Tex. 1986) (stating that
"[c]ontracts made by municipal corporations in their proprietary capacity have
been held to be governed by the same rules as contracts between individuals," and
that a city that contracts in its proprietary role is "clothed with the same authority
and subject to the same liabilities as a private citizen")).

 In Tooke, the Texas Supreme Court addressed the application of
governmental immunity to a suit to recover on an alleged breach of contract for
waste removal by the City, and the Tookes contended that their contract dispute
with the City involved a proprietary function. Id. at 343. The Tooke Court stated
that the "Texas Constitution authorizes the legislature to 'define for all purposes
those functions of a municipality that are to be considered governmental and those
that are proprietary, including reclassifying a function's classification assigned
under prior statute or common law.'" Id. (citing Tex. Const. art. XI, § 13). The
Tooke Court then pointed out that "for purposes of tort liability, the Legislature has
statutorily included [waste removal] among a municipality's governmental
functions." Id. (citing Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)(6)
(Vernon 2005)). The Tooke Court concluded, "[W]e see no reason to think that the
classification would be different under the common law. Thus, even if the City
were not immune from suit for a breach of a contract whose subject lies within its
proprietary functions, the Tookes' contract does not qualify." Id. at 344.

 Following its opinion in Tooke, the Texas Supreme Court held again:

Because the Legislature has statutorily included "sanitary and storm
sewers" among a municipality's governmental functions for purposes
of tort liability [under Texas Civil Practice and Remedies Code
section 101.0215(a)(9)], and we see no reason to think that the
classification would be different under the common law, we conclude
that the City was acting in its governmental capacity when it
contracted with PKG to construct a storm drainage system.


PKG Contracting, Inc. v. City of Mesquite, 197 S.W.3d 388, 388-89 (Tex. 2006).

 Courts of Appeals, including this Court, have subsequently applied the
governmental-proprietary dichotomy to breach of contract cases. See City of
Emory v. Lusk, 278 S.W.3d 77, 83 (Tex. App.--Tyler 2009, no pet.) (holding that
"due to the City's immunity [under Texas Civil Practice and Remedies Code
section 101.0215], the Lusks are precluded from filing a suit for breach of
contract"); City of Houston v. Petroleum Traders Corp., 261 S.W.3d 350, 355-56
(Tex. App.--Houston [14th Dist.] 2008, no pet.) (examining Tooke and stating,
"Even assuming for argument's sake that the dichotomy does apply to PTC's
contract claim, the fuel purchases at issue here are a governmental function"); City
of Weslaco v. Borne, 210 S.W.3d 782, 791-92 (Tex. App.--Corpus Christi 2006,
pet. denied) (analyzing breach of contract claim with "assumption that the
proprietary-governmental dichotomy extends to breach of contract claims"); see
also Temple v. City of Houston, 189 S.W.3d 816, 821 (Tex. App.--Houston [1st
Dist.] 2006, no pet.) ("Because the City was performing a proprietary function in
providing insurance for its employees, the City does not have sovereign
immunity."). Furthermore, Tooke and subsequent cases have demonstrated a
deference to the Legislature's classification of a function as either governmental or
proprietary in contract cases as well as tort cases. See Tooke, 197 S.W.3d at 344
(contract); PKG Contracting, 197 S.W.3d at 388-89 (contract); Petroleum Traders
Corp., 261 S.W.3d at 355-56 (contract). 

 Here, just as in Tooke and PKG Contracting, section 101.0215 of the Texas
Civil Practice and Remedies Code defines the action undertaken by the City--in
this case, Community Development Activities authorized under the Texas Local
Government Code--as a governmental activity. See Tex. Civ. Prac. & Rem.
Code Ann. § 101.0215(a)(34) (Vernon 2005) (deeming that "community
development or urban renewal activities undertaken by municipalities and
authorized under Chapters 373 and 374 of the Texas Local Government Code"
constitute governmental activity); Tooke, 197 S.W.3d at 344; PKG Contracting,
197 S.W.3d at 388-89.

 We follow Tooke's holding that the Texas Constitution requires that courts
defer to the legislature's classification of a governmental entity's actions as either
governmental or proprietary. See Tex. Const. art. XI, § 13 (authorizing
Legislature to "define for all purposes those functions of a municipality that are to
be considered governmental and those that are proprietary, including reclassifying
a function's classification assigned under prior statute or common law"); Tooke,
197 S.W.3d at 343 (quoting same). Therefore, we conclude that the Legislature's
classification of Community Development Activities authorized under Chapter 373
or 374 of the Local Government Code as a governmental function is instructive in
this case, and we hold that the City was acting in its governmental capacity in
entering the loan agreement with East Houston.

 In so holding, we recognize that City of Houston v. Southwest Concrete
Construction, Inc., 835 S.W.2d 728 (Tex. App.--Houston [14th Dist.] 1992, writ
denied), the case relied on by East Houston, and Josephine E. Abercrombie
Interests, Inc. v. City of Houston, 830 S.W.2d 305 (Tex. App.--Corpus Christi
1992, writ denied), have been abrogated by statute. In Southwest Concrete, the
City was sued for breaching two contracts with a private contract in which the city
agreed to administer loans created under the federal Rental Rehabilitation Program. 
Sw. Concrete, 835 S.W.2d at 729. In Abercrombie, the city foreclosed on a
development project that it had agreed to fund in part through federal community
development block grant loans. Abercrombie, 830 S.W.2d at 306. The Southwest
Concrete and Abercrombie courts both examined the definitions of proprietary and
governmental acts as provided in section 101.0215 of the Texas Civil Practice and
Remedies Code and held that the city's activities were proprietary functions. Sw.
Concrete, 835 S.W.2d at 730-33; Abercrombie, 830 S.W.2d at 308-09. However,
both of these cases predate the Legislature's 1997 amendment to include section
101.0215(a)(34). See Tex. S.B. 1697 & H.B. 2766, 75th Leg., R.S. (1997).

 In its analysis of the 1997 enabling legislation, House Bill 2766, the House
Committee on Civil Practice stated:

Community development activities, even though inherently
governmental, are not categorized in the [Texas Torts Claims Act] as
either governmental or proprietary. However, courts have found them
to be proprietary (i.e., discretionary), resulting in unlimited liability
for the municipality. Consequently, lawsuits against municipalities
relating to community development activities diminish the funds
available for projects within the municipality. The designation of
community development activities as a governmental function should
provide reasonable limits on recoveries in this arena and avoid the
potential of major losses which would reduce funding of community
development projects.


House Comm. On Civil Practices, Bill Analysis, Tex. H.B. 2766, 75th Leg.,
R.S. 1997. As we have already stated, the Texas Constitution authorizes the
legislature to reclassify a function's classification assigned under prior statute or
common law. Tooke, 197 S.W.3d at 343 (citing Tex. Const. art. XI, § 13). The
legislature's amendment of Civil Practice and Remedies Code section 101.0215(a)
to include subsection (34) expresses its clear intent that Community Development
Activities under Chapter 373 or 374 of the Local Government Code be considered
governmental activities in the tort context, and we hold that the legislature's
reasoning applies in the contract context as well. See Tooke, 197 S.W.3d at 344;
PKG Contracting, 197 S.W.3d at 388-89; Temple, 189 S.W.3d at 821.

 2. Compliance with Chapters 373 and 374

 East Houston argues that, even if we hold that section 101.0215(a)(34) of the
Civil Practice and Remedies Code classifies Community Development Activities
authorized by Chapters 373 or 374 of the Local Government Code as governmental
for purposes of contract claims, the City is still not immune from suit because it
did not comply with the provisions of Chapter 373 or Chapter 374.

 Chapter 373 authorizes a municipality to adopt a community development
program to aid in the prevention or elimination of slums and blighted areas,
including the rehabilitation of privately-owned properties. Tex. Loc. Gov't Code
Ann. §§ 373.004-373.005 (Vernon 2005); Tex. Bay Cherry Hill, L.P. v. City of
Fort Worth, 257 S.W.3d 379, 390 (Tex. App.--Fort Worth 2008, no pet.). A
municipality must conduct public hearings on the proposed community
development program before adopting the program by resolution or ordinance. 
Tex. Loc. Gov't Code Ann. § 373.006 (Vernon 2005); Tex. Bay Cherry Hill, 257
S.W.3d at 390.

 Here, the loan agreement was made to provide funding to a private entity,
East Houston, for the purpose of rehabilitating an apartment complex to provide
very low-income and low-income housing, and it was approved and adopted by the
Houston City Council in an ordinance at its February 18, 1998 meeting. We
conclude this is sufficient compliance for the City's activities to qualify as
Community Development Activities authorized by Chapter 373 for purposes of
determining immunity from suit. See Tex. Bay Cherry Hill, 257 S.W.3d at 390
("The City held public hearings on the Plan before adopting it by resolution. Thus,
the Plan is a Community Development Plan under Local Government Code chapter
373, and the City's adoption of the Plan was the exercise of a governmental
function under Civil Practice and Remedies Code section 101.0215(a)(34) as
well."); see also Chambers v. City of Austin, No. 03-00-00595-CV, 2001 WL
726372, at *4 (Tex. App.--Austin June 29, 2001, no pet.) (not designated for
publication) ("Questions that may or may not exist regarding the City's compliance
with the procedural requirements for adoption of the program, or the providing of
financing, have no bearing on the authorization of the program under Chapter 373. 
In deciding that the program is authorized under chapter 373, we need not, and do
not address the issue of the City's adherence to the proper procedural route in the
adoption and administration of the program.").

 Therefore, the City's act in entering the Loan Agreement with East Houston
was a governmental act--not a proprietary one--and its immunity from suit is not
waived on that basis.

C. Waiver of Immunity Under Local Government Code section 271.152

 Alternatively, East Houston argues that Texas Local Government Code
section 271.152 waives the City's immunity from suit on the contract.

 In the context of a claim for breach of contract, the legislature must have
waived immunity from suit as to the claim in question by clear and unambiguous
language for immunity to be waived. See Tex. Gov't Code Ann. § 311.034
(Vernon Supp. 2008) (providing that a statute shall not be construed as a waiver of
sovereign immunity unless the waiver is effected by clear and unambiguous
language); Tooke, 197 S.W.3d at 332-33 (requiring clear and unambiguous
language to waive governmental immunity).

 Section 271.152 provides:

A local government entity that is authorized by statute or the
constitution to enter into a contract and that enters into a contract
subject to this subchapter waives sovereign immunity to suit for the
purpose of adjudicating a claim for breach of the contract, subject to
the terms and conditions of this subchapter.


Tex. Loc. Gov't Code Ann. § 271.152 (Vernon 2005). A contract subject to
section 271.152 is defined as "a written contract stating the essential terms of the
agreement for providing goods or services to the local government entity that is
properly executed on behalf of the local government entity." (6) Tex. Loc. Gov't
Code Ann. § 271.151(2) (Vernon 2005).

 Our primary goal in interpreting a statute is to determine and effectuate the
legislature's intent in promulgating the statute. In re Canales, 52 S.W.3d 698, 702
(Tex. 2001). When a statute is clear and unambiguous, we discern the legislature's
intent by giving the words in the statute their plain and common meaning and by
giving effect to all of the statute's terms. Mueller v. Beamalloy, Inc., 994 S.W.2d
855, 860 (Tex. App.--Houston [1st Dist.] 1999, no pet.) (citing Tex. Gov't Code
Ann. § 311.021 (Vernon 2005)). In construing statutes as a whole, we consider all
provisions of an act and decline interpretations that produce absurd results or
render terms meaningless. Id.

 East Houston argues that its agreement with the City provided for East
Houston to provide the service of rehabilitating the apartment complex and
providing very low-income and low-income housing for City residents and for the
City to release to it all of the funds allocated by the loan agreement. The City
argues that the agreement between itself and East Houston was a loan agreement
that does not require East Houston to provide anything that could be construed as a
service to the City.

 East Houston argues that because the terms of the loan agreement and the
restrictive covenants restricted the amount of rent it could charge for a portion of
its units for a period of years, it was providing low-income housing as a service to
the City. East Houston cites Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v.
Tex. Political Subdivisions Prop./Cas. Joint Self-Insurance Fund, 212 S.W.3d 320
(Tex. 2006) and Clear Lake City Water Auth. v. Friendswood Dev. Co., 256
S.W.3d 735 (Tex. App.--Houston [14th Dist.] 2008, pet. dism'd) in support of its
argument. In Ben Bolt, the school district sued the joint self-insurance fund for a
declaratory judgment on coverage for property loss, and the fund claimed
immunity from suit. Ben Bolt, 212 S.W.3d at 322-23. The fund argued that its
insurance contract with Ben Bolt was not a contract subject to section 271.152
because no goods or services were provided to the Fund. In finding that the fund's
immunity from suit was waived under section 271.152, the Ben Bolt court held:

It is true that Ben Bolt is a consumer of insurance that the Fund offers. 
But the relationship between the Fund and its members differs from
the ordinary consumer/seller relationship. As the Fund has
acknowledged, its members elect a governing board, and a board
subcommittee resolves claims disputes. To that extent, at least, the
Fund's members provide services to the Fund. Moreover, the statute's
legislative history indicates that, by enacting section 271.152, the
Legislature intended to loosen the immunity bar so "that all local
governmental entities that have been given or are given the statutory
authority to enter into contracts shall not be immune from suits arising
from those contracts." House Comm. on Civil Practices, Bill
Analysis, Tex. H.B. 2039, 79th Leg., R.S. (2005) (emphasis added). 
There is no indication that the Legislature intended to exclude self-insurance fund agreements from enforcement.


Ben Bolt, 212 S.W.3d at 327; see also Tex. Assoc. of Sch. Bds. Risk Mgmt. Fund v.
Benavides Ind. Sch. Dist., 221 S.W.3d 732, 738-39 (Tex. App.--San Antonio
2007, no pet.) (applying reasoning from Ben Bolt to suit between school district
and risk management fund and holding that chapter 271 waived fund's immunity
from suit for contractual claims brought by district).

 In Clear Lake, Friendswood Development Company filed a breach of
contract action against the city water authority because the authority failed to place
on the bond election ballot a proposal to pay for facilities constructed by the
development company under the terms of the contract. Clear Lake, 256 S.W.3d at
739. The contract between the development company and the water authority
specifically provided that the development company was developing land within
the authority with the intention that the water authority would seek voter approval
to pay for the construction and acquisition of the facilities constructed. Id. at 747. 
The Clear Lake court discussed the Texas Supreme Court's analysis in Ben Bolt
and held:

If the school district's participation in the election of the fund's
governing board was sufficient to constitute the provision of services
in the insurance contract in Ben Bolt, then we conclude that
Friendswood Development's agreement to hire third parties to
construct the Facilities and to build the streets, roads, and bridges is
likewise sufficient to constitute the provision of services to the
Authority. Applying the Ben Bolt court's liberal construction of the
applicable statute, we conclude that the Agreement is a written
contract stating the essential terms of the agreement for providing
services to the Authority for the construction of the Facilities as well
as for the construction of streets, roads, and bridges in the
Subdivision. Therefore, the Authority's immunity from suit for all
claims for breach of the Agreement has been waived under section
271.152.


Clear Lake, 256 S.W.3d at 751 (internal citation omitted). We disagree that this
case is controlled by Ben Bolt and Clear Lake.

 The Loan Agreement between East Houston and the City defined the rights
and obligations of the parties. The City thus agreed to disburse the federal funds to
East Houston, subject to certain terms and conditions, as part of an inter-creditor
agreement for the financing of the federal government community development
program. Among the conditions was the requirement that 51% of East Houston's
apartment units be available to very low-income and low-income families at the
prescribed affordability rates. The federal loan was subject to an inter-creditor
agreement pursuant to which Chase Bank agreed to loan additional funds to East
Houston, and East Houston agreed to pay the money back. Both loans were
secured by the private property for whose development the funds were provided in
a municipally directed project. It is clear that, while the City would benefit in a
general way from having East Houston's apartment units refurbished and from the
availability of more housing for low-income families, nothing in the contract
obligated East Houston to provide any municipal service directly to the City. The
central purpose of the agreement between the City and East Houston was to
facilitate a loan of money from the City's portion of federal funds and from private
funds to a private entity for the purpose of renovating East Houston's empty
apartment building. The City was thus a conduit of federal funds and a facilitator
of the project, but no services were provided directly to the City. This is clearly
not the type of "service" envisioned by section 271.152. 

 The plain meaning of the statute supports the conclusion that section
271.152 does not apply to contracts like the one at issue here, in which the benefit
that the City would receive is an indirect, attenuated one. Section 271.152 is
clearly limited as to which contracts fall under the waiver of immunity from suit. 
See Tex. Loc. Gov't Code Ann. § 271.151(2) (section 271.152 applies to "a
written contract stating the essential terms of the agreement for providing goods or
services to the local government entity that is properly executed on behalf of the
local governmental entity"). If every contract that confers some attenuated benefit
on a governmental entity constitutes a contract for a "service," the limitation of
contracts covered by section 271.152 to "contract for goods or services provided to
the entity" loses all meaning. Nothing in the statute nor in its legislative history
supports such an interpretation. Had the legislature intended to waive immunity
from liability for every contract participated in by the State, it could have done so. 
We must interpret the limitation as having some meaning. See Mueller, 994
S.W.2d at 860.

 Furthermore, the Ben Bolt court looked to the special relationship between
the parties to conclude that they provided mutual services to each other--Ben Bolt,
a school district, provided board members to the fund, another state governmental
entity, while the fund provided insurance coverage to Ben Bolt in exchange for
premium payments. See Ben Bolt, 212 S.W.3d at 327. Likewise, the Clear Lake
court followed the reasoning in Ben Bolt in determining that the development
company had provided a service for the water authority in constructing streets,
roads, and bridges. See Clear Lake, 256 S.W.3d at 751.

 Here, the relationship between the parties is quite different. East Houston, a
private citizen, and the City entered into a Loan Agreement in which the City
agreed to loan East Houston federal community development funds received
through the City's separate HOME Agreement with a federal funding agency for
rehabilitation of East Houston's privately owned apartment building. The benefit
of the funds received thus ran directly from the federal government and Chase
Bank to East Houston, not to the City, and East Houston never contracted to
provide any service directly to the City.

 The underlying contract here is also of a different character than that of the
contract in Ben Bolt. In Ben Bolt, the governmental entity whose immunity from
suit was waived was involved in the proprietary function of providing insurance
coverage. See Ben Bolt, 212 S.W.3d at 327; see also Temple, 189 S.W.3d at 821
(holding that selling insurance is proprietary function for which there is no
immunity from suit for breach of contract claim); Gates, 704 S.W.2d at 738
(stating that "[c]ontracts made by municipal corporations in their proprietary
capacity have been held to be governed by the same rules as contracts between
individuals" and that city that contracts in its proprietary role is "clothed with the
same authority and subject to the same liabilities as a private citizen"). Here, the
City was involved in the governmental function of directing federal community
development funds and private funds into local community development projects
to further governmental policy.

 In Tooke, the Texas Supreme Court discussed the importance of the
legislature's control over waiver of immunity as a means of protecting state
resources. See Tooke, 197 S.W.3d at 331-32 ("The [principle of sovereign
immunity] remains firmly established, and as it has come to be applied to the
various governmental entities in this State, an important purpose is pragmatic: to
shield the public from the costs and consequences of improvident actions of their
governments."). This consideration is even more significant in a situation like this,
when the distribution of federal and private funds, but not municipal funds, to a
private entity is involved to further public policy.

 We conclude that the Loan Agreement that the City entered into with East
Houston is not the type of contract covered by section 271.152's waiver of
immunity from suit, and the City's immunity is not waived on that basis. (7) 
Therefore the trial court did not err in sustaining the City's plea to the jurisdiction.

 We overrule East Houston' sole point of error.

Conclusion

 We affirm the order of the trial court.






 Evelyn V. Keyes

 Justice


Panel consists of Justices Keyes, Hanks, and Bland.
1. Two other parties were named as defendants in the proceedings below: Chase Bank
of Texas, N.A. and East Houston Apartments, L.L.C. However, neither of these
parties was subject to the order sustaining the City's plea to the jurisdiction and
neither participates in this appeal.

2. See Tex. Loc. Gov't Code Ann. § 271.152 (Vernon 2005).
3. The City and East Houston also agreed to restrictive covenants that essentially
mirrored the terms of the Loan Agreement.
4. See Tex. Loc. Gov't Code Ann. §§ 373.001-373.006, 374.001-374.910 (Vernon
2005).
5. See Tex. Loc. Gov't Code Ann. § 271.152.
6. The statute does not define what constitutes a "service."
7. Because of our holding on this issue, we do not need to address the City's alternative
argument that East Houston did not plead proper damages.