Bret "Doc" BERKMAN, Appellant,

v.

CITY OF KEENE, Appellee.

No. 10–08–00073–CV.

Court of Appeals of Texas, Waco.

Nov. 4, 2009.

Keith Bradley, Bradley & Cain, LLC, D. Scott Cain, Cain & Associates, Cleburne, for Appellant.

Thomas P. Brandt, Fanning Harper & Martinson PC, Dallas, for Appellee.

Before Chief Justice GRAY*, Justice REYNA, and Justice DAVIS.

## OPINION ON REHEARING

FELIPE REYNA, Justice.

Bret "Doc" Berkman filed suit against the City of Keene alleging that the City was obligated to furnish water and sewer services to his property at no charge under an agreement between the City and Berkman's predecessors in title. The trial court granted the City's summary-judgment motion. On original submission, we reversed the judgment and remanded this cause for further proceedings. The City contends in its motion for rehearing that the case should be dismissed for want of jurisdiction because of its immunity from suit. We agree.

According to the agreement which is the basis for the underlying suit, the City agreed to furnish up to 1.2 million gallons of water per year to the property at no charge and to furnish sewer services to the property at no charge. The City agreed to furnish water and sewer services under these terms for 35 years if the property was "used on a continuous basis from the date of this agreement forward as a home

---

* Without joining the opinion or issuing a separate opinion, Chief Justice Gray concurs in the dismissal for want of jurisdiction noting, "I simply cannot join much of the sweeping language and purported analysis of broad or narrow interpretation of the waiver of immunity. This contract is not for the provision of goods or services to the City of Keene."

for children who are wards of the State" or for 20 years if the property ceased to be used for this purpose.

■ The City contends on rehearing that its immunity from suit has not been waived and thus the trial court lacked subject-matter jurisdiction.[1] Berkman responds that the City's immunity is waived by section 271.152 of the Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. § 271.152 (Vernon 2005).

■ "Governmental immunity from suit defeats a trial court's jurisdiction." *See Ben Bolt–Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self–Ins. Fund,* 212 S.W.3d 320, 323 (Tex.2006). Such immunity protects political subdivisions like the City from lawsuits except when that immunity has been waived by the Legislature. *Id.* at 324. Section 271.152 waives immunity from suit for breach-of-contract claims arising from "a contract subject to [chapter 271, subchapter I]" of the Local Government Code. TEX. LOC. GOV'T CODE ANN. § 271.152; *see Ben Bolt,* 212 S.W.3d at 327.

A contract subject to this subchapter is statutorily defined as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." TEX. LOC. GOV'T CODE ANN. § 271.151(2) (Vernon 2005). Citing *Ben Bolt* and *Dallas Area Rapid Transit v. Monroe Shop Partners, Ltd.,* 293 S.W.3d 839 (Tex.App.-Dallas 2009, pet. filed), Berkman argues that the " 'goods and services' provision of the statute ha[s] been loosely and broadly interpreted to allow suits for breach of contracts against governmental entities." However, we believe he reads these decisions too "loosely and broadly."

The Supreme Court in *Ben Bolt* held that an insurance contract between a school district and a self-insurance fund qualified as a written contract for the provision of goods and services under the statute. *See Ben Bolt,* 212 S.W.3d at 327. As noted, section 271.151(2) defines the requisite contract as one for the provision of "goods or services *to the* local governmental entity." TEX. LOC. GOV'T CODE ANN. § 271.151(2) (emphasis added). The Fund in *Ben Bolt* argued that the contract at issue provided for services to the school district but not to the Fund, whose waiver of immunity was at issue. *See Bolt,* 212 S.W.3d at 327. The Supreme Court disagreed, apparently for two reasons. First, the Court observed that Fund members (like the Ben Bolt school district) elected a governing board and a subcommittee of that board resolved claim disputes. *Id.* "To that extent, at least, the Fund's members provide services to the Fund." *Id.*

Perhaps more importantly, the Court observed that "the statute's legislative history indicates that, by enacting section 271.152, the Legislature intended to loosen the immunity bar so 'that *all* local governmental entities that have been given or are given the statutory authority to enter into contracts shall not be immune from suits arising from those contracts.' " *Id.* (quoting HOUSE COMM. ON CIVIL PRACTICES, BILL ANALYSIS, Tex. H.B. 2039, 79th Leg., R.S. (2005)). The Court concluded that "entering into 'a written contract stating the essential terms of [an] agreement for providing goods or [insurance] services to [a] local governmental entity' clearly does [constitute a waiver of immunity under the

---

1. Because immunity from suit deprives a trial court of subject-matter jurisdiction, it may be raised for the first time in a motion for rehearing in the court of appeals. *See Travis Cent. Appraisal Dist. v. Norman,* 274 S.W.3d 902, 912 (Tex.App.-Austin 2008, pet. granted).

statute]." *Id.* (emphasis added) (quoting TEX. LOC. GOV'T CODE ANN. § 271.151(2)). Thus, it appears that the Court has construed the statute broadly to waive governmental immunity for any local governmental entity which is a party to a written contract for the provision of goods or services to a local governmental entity regardless of whether the entity being sued is the recipient or provider of such goods or services.[2] *See Tex. Ass'n of Sch. Bds. Risk Mgmt. Fund v. Benavides Indep. Sch. Dist.,* 221 S.W.3d 732, 738–39 (Tex. App.-San Antonio 2007, no pet.).

The Dallas Court stated in *DART,* "Our Court has read the waiver provision of section 271.152 broadly. Once the trial court determines whether a contract falls within the provisions of section 271.152, then any class of breach falls within it." *DART,* 293 S.W.3d at 841 (citing *City of Mesquite v. PKG Contracting, Inc.,* 263 S.W.3d 444, 447 (Tex.App.-Dallas 2008, pet. filed)). In *PKG Contracting,* the Dallas Court construed the statute broadly only in considering whether a particular breach-of-contract claim was included within the waiver of immunity where the parties did not dispute that the contract itself fell within the provisions of section 271.152. *See PKG Contracting,* 263 S.W.3d at 447 (rejecting city's claim that waiver of immunity applied only to "claims of breach of the essential, written terms of an agreement, not for implied duties").

In *DART* however, the court arguably construed the statute broadly in considering whether it applied to the contract at issue. The contract at issue was a "CONTRACT OF SALE AND DEVELOPMENT" "which called for DART to sell, and Monroe to purchase and develop, certain historically significant property near a DART rail station." *DART,* 293 S.W.3d at 840. Monroe sued DART for breach of contract. *Id.* at 839–40. DART argued that its governmental immunity was not waived by section 271.152 because the contract was merely a real estate sales contract and not a contract for goods or services. *See id.* at 840–41. The Dallas Court disagreed, observing that the contract required Monroe to provide "pre-closing and post-closing development services … related to the construction on the property" which would be of some benefit to DART. *Id.* at 840–41. Thus, the court held that the contract included "promises by Monroe to provide services to DART." *Id.* at 841.

The Fourteenth Court has likewise construed the statute in broad fashion. *See Clear Lake City Water Auth. v. Friendswood Dev. Co., Ltd.,* 256 S.W.3d 735, 748–50 (Tex.App.-Houston [14th Dist.] 2008, pet. dism'd). The contract at issue in *Friendswood Development* was entitled "Sales Agreement and Lease of Facilities." *Id.* at 738. "Friendswood Development

---

**2.** Although it is not entirely clear from the Court's opinion in *Ben Bolt,* we believe this is the correct interpretation because the Court: (1) construed the pertinent statutory language as applying to any written contract for the provision of goods or services to *"a"* local governmental entity rather than *"the"* local governmental entity; (2) later repeated its observation that the Fund had entered a contract "for providing [insurance] services to [a] local governmental entity"; and (3) did not make further mention of its observation that, to a limited extent, Fund members provided services to the Fund. *See Ben Bolt–Palito*

*Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self–Ins. Fund,* 212 S.W.3d 320, 327–28 (Tex.2006); *Tex. Ass'n of Sch. Bds. Risk Mgmt. Fund v. Benavides Indep. Sch. Dist.,* 221 S.W.3d 732, 738–39 (Tex.App.-San Antonio 2007, no pet.); *see also Ben Bolt,* 212 S.W.3d at 330 (Willett, J., dissenting) (criticizing this aspect of the majority opinion). *But cf. Clear Lake City Water Auth. v. Friendswood Dev. Co., Ltd.,* 256 S.W.3d 735, 749–50 (Tex.App.-Houston [14th Dist.] 2008, pet. dism'd) (concluding that *Ben Bolt* decision focused on Fund members' provision of services to the Fund).

was to arrange for the construction of water distribution lines, sanitary sewer lines, and drainage facilities to provide service to houses Friendswood Development proposed to build on its land; and the Authority agreed to purchase or lease the completed 'Facilities.'" *Id.* at 739. The court recognized that Friendswood Development's obligation to arrange for the construction of these items appeared to be "directed towards and to benefit the Subdivision and its residents, rather than the Authority," but nevertheless concluded that under "the *Ben Bolt* court's liberal construction of the applicable statute," the agreement was one for the provision of services to the Authority. *Id.* at 750–51.

We would not go so far as the Fourteenth Court did in *Friendswood Development.* Rather, we are more persuaded by the interpretation advanced by the First Court in *East Houston Estate Apartments, L.L.C. v. City of Houston,* 294 S.W.3d 723 (Tex.App.-Houston [1st Dist.] 2009, no pet.). In that case, the court began its discussion of section 271.152 by referring to both statutory and common law requirements that a waiver of immunity must be clear and unambiguous. *Id.* at 733–34 (citing TEX. GOV'T CODE ANN. § 311.034 (Vernon Supp. 2009); *Tooke v. City of Mexia,* 197 S.W.3d 325, 332–33 (Tex.2006)). The court held that the statute does not apply to contracts "in which the benefit that the [local governmental entity] would receive is an indirect, attenuated one." *Id.* at 736.

If every contract that confers some attenuated benefit on a governmental entity constitutes a contract for a "service," the limitation of contracts covered by section 271.152 to "contract for goods or

services provided to the entity" loses all meaning. Nothing in the statute nor in its legislative history supports such an interpretation. Had the legislature intended to waive immunity from liability for every contract participated in by the State, it could have done so. We must interpret the limitation as having some meaning.

*Id.* at 736.

■ Here, Berkman contends that the parties' agreement includes the provision of at least two services to the City: (1) use of the property as a children's home; and (2) the filing of an annexation petition for the property.[3] However, these are at best "indirect" or "attenuated" benefits to the City. *See id.* at 736.

The City has no independent obligation to provide for the welfare of children who are wards of *the State.* Thus, the commitment to use the property as a children's home is at most the provision of a service to the State rather than the City. *Cf. id.* at 736–37 (benefit of funds under agreement "ran directly from the federal government and Chase Bank to [the apartments], not to the City"). To the extent that the needs of parentless children in the City are met, this would be an indirect benefit to the City.

Nor does the filing of an annexation petition constitute the provision of a service to the City. At most, the filing of the annexation petition provided an indirect benefit to the City in this instance by ultimately expanding the City's tax base.

For these reasons, the agreement at issue is not "a contract subject to [chapter 271, subchapter I]" of the Local Government Code. *See* TEX. LOC. GOV'T CODE ANN.

---

**3.** These are two of the three requirements which served as consideration for the conveyance by Berkman's predecessors in title of three small tracts of land to the City. The other requirement was the City's agreement to furnish water and sewer services at no charge for a specified period of time.

§ 271.152; *E. Houston Estate Apartments,* 294 S.W.3d at 735–37. Therefore, the City's immunity from suit was not waived. *See E. Houston Estate Apartments,* 294 S.W.3d at 737.

The City's motion for rehearing is granted. The opinion and judgment of this Court dated July 15, 2009 are withdrawn, and the opinion and judgment we issue today are substituted therefor. We reverse the trial court's judgment and render a judgment of dismissal for want of jurisdiction.

Chief Justice GRAY concurring with note.