

# IN THE
## TENTH COURT OF APPEALS

### No. 10-09-00403-CV

**BRAZOS RIVER AUTHORITY,**

                                        **Appellant**

 **v.**

**BRAZOS ELECTRIC POWER
COOPERATIVE, INC.,**

                                        **Appellee**

**From the 414th District Court
McLennan County, Texas
Trial Court No. 2009-2364-5**

## MEMORANDUM OPINION

The Morris Sheppard Dam on Possum Kingdom Lake has a hydroelectric generation facility (the Facility) that is owned and operated by the Brazos River Authority (the Authority), a political subdivision of Texas and a local governmental entity. *See* TEX. LOC. GOV'T CODE ANN. § 271.151(3) (Vernon 2005). Since 1941, the Authority has sold all of the hydroelectric power produced by the Facility's two generators to Brazos Electric Power Cooperative, Inc. (Brazos Electric) or its predecessor.

According to Brazos Electric's live pleading, in 1991, the Authority and Brazos Electric entered into a new Power Supply Contract (the PSC) that provided for the sale of all hydroelectric power produced at the Facility to Brazos Electric at a favorable rate and based on the Facility's capacity and hours of operation. The PSC is in effect until 2019. Until the Facility ceased producing hydroelectric power in 2007 because of an alleged need of repairs, Brazos Electric was buying power from the Authority at the favorable 1991 rate.

In 2003, the Authority claimed that the Facility's maintenance costs were excessive and too large in comparison to the anticipated revenue from the PSC and engaged Brazos Electric in negotiations over an amendment to the PSC to repair the Facility and to adjust the rate to pay for the repairs. Brazos Electric alleges that the negotiations changed when the Authority said that it no longer desired to operate the Facility and instead proposed that Brazos Electric enter into a new agreement for Brazos Electric to operate and manage the Facility for thirty years.

In 2007, the Authority and Brazos Electric entered into two related agreements as a result of the negotiations. The Facilities Use Agreement (the FUA) was a long-term agreement under which Brazos Electric would possess, operate, and maintain the Facility in exchange for the right to receive the power produced by the Facility. The FUA would commence upon its approvals by the Federal Energy Regulatory Commission (as to the Authority) and the Rural Utilities Service (as to Brazos Electric). When the approvals were obtained and the FUA became effective, the PSC would be superseded.

The other agreement was the Facility Cost Agreement (the FCA). It was a "bridge" or interim agreement between the parties in which Brazos Electric agreed to be responsible for the Facility's cost until the regulatory approvals were obtained and the FUA commenced. Because the FUA never commenced (in part because the approvals were not obtained), the FCA expired by its own terms on April 30, 2009. The underlying lawsuit then commenced.

Brazos Electric sued the Authority for breach of contract and for a declaratory judgment that the Authority breached the contracts and that Brazos Electric is discharged from its contractual obligations. Brazos Electric seeks to recover damages "in the many millions of dollars" for the lost energy during the remaining term of the PSC and for the "cover" cost for replacement power that Brazos Electric has had to purchase at a substantially higher cost. The Authority filed a plea to the jurisdiction, asserting its governmental immunity from suit and that Brazos Electric had failed to establish a legislative waiver of immunity. The trial court held an evidentiary hearing on the plea to the jurisdiction, after which the trial court signed an order denying the plea. This interlocutory appeal followed.

Whether the trial court had subject-matter jurisdiction is a question of law that we review de novo. *Tex. Natural Res. Conservation Comm'n v. IT-Davy,* 74 S.W.3d 849, 855 (Tex. 2002); *see also Houston Mun. Employees Pension Sys. v. Ferrell,* 248 S.W.3d 151, 156 (Tex. 2007). In reviewing the trial court's ruling on a plea to the jurisdiction, we consider the facts alleged by the plaintiff and, to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties. *Ferrell,* 248 S.W.3d at 156.

Governmental immunity from suit defeats a trial court's subject-matter jurisdiction; thus, it is properly asserted in a plea to the jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225-26 (Tex. 2004); *see also Ben Bolt-Palito Blanco Consol. ISD v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323 (Tex. 2006). This immunity protects political subdivisions like the Authority from lawsuits except when that immunity has been waived by the Legislature. *Ben Bolt*, 212 S.W.3d at 324.

Section 271.152 waives immunity from suit for breach-of-contract claims arising from "a contract subject to [chapter 271, subchapter I]" of the Local Government Code. TEX. LOC. GOV'T CODE ANN. § 271.152; *see Ben Bolt*, 212 S.W.3d at 327. A contract subject to this subchapter is statutorily defined as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." TEX. LOC. GOV'T CODE ANN. § 271.151(2). Brazos Electric contends that the section 271.152 waiver applies because Brazos Electric adequately pleaded that it provides services to the Authority under the PSC, the FCA, and the FUA or that the trial court properly denied the plea because fact issues exist on whether it provides services under those contracts based on the evidentiary record.

We recently addressed this statutory waiver and, after analyzing competing strict and broad applications of the statute and distinguishing *Ben Bolt*, adopted the Houston First court's strict application. *See Berkman v. City of Keene,* --- S.W.3d ---, ---, 2009 WL 3646011, at *1-3 (Tex. App.—Waco Nov. 4, 2009, pet. denied) (op. on reh'g).

We thus will apply *Berkman* to this case.

Our first step in addressing the waiver's application is to determine whether the parties' contracts (the PSC, FCA, and FUA) state "the essential terms of the agreement" for the goods and services that Brazos Electric claims it provides to the Authority. *Learners Online, Inc. v. Dallas ISD*, --- S.W.3d ---, ---, 2009 WL 2138974, at *6 (Tex. App.—Dallas July 20, 2009, no pet.). We therefore consider the relevant jurisdictional evidence before us—the contracts between the parties. Neither party contends that the contracts at issue are ambiguous. Construction of an unambiguous contract is a question of law for the court. *MCI Telecomms. Corp. v. Tex. Utils. Elect. Co.*, 995 S.W.2d 647, 650 (Tex. 1999).

We first address the FUA. Brazos Electric pleads that because, under the FUA, it will operate, maintain, and repair the Facility and supply the Facility with electricity, the FUA provides the essential terms of an agreement for providing goods or services to the Authority. The FUA is in essence a lease of the Facility—the FUA describes the Facility as the "Leased Facility." Brazos Electric's lease of the Facility is not the provision of goods or services to the Authority, and Brazos Electric does not attempt to argue otherwise in this appeal. We thus hold that a claim for breach of the FUA does not come within section 271.152's waiver.

Brazos Electric contends that, under the PSC (and the FCA, which incorporates the PSC), it provides electricity to the Authority's Facility under the PSC's "Station Use" provision and that it also provides transmission, distribution, transformer, and metering services to the Authority under the PSC in connection with the Authority's

Station Use.

The PSC (section 2.19) defines "Station Use" as "Consumption of electricity produced by the Project by facilities within the power house and by all ancillary BRA facilities served from the Brazos Electric/BRA substation."[1] Section 10.6 of the PSC provides that the Authority will apply a credit on its bills to Brazos Electric for the power consumed as Station Use. Plainly, this credit is an accounting adjustment so that the Authority does not bill Brazos Electric for power generated and consumed by the Authority; rather, Brazos Electric pays the Authority for the net electricity delivered and sold to it. Also, at the hearing, Brazos Electric's representative acknowledged that the Authority, if it chose to or needed to, could have access to the local retail electricity provider (one of Brazos Electric's members) if the Authority were not obtaining Station Use electricity from Brazos Electric's substation. Finally, the Authority's bills that are in the record show that the Station Use electricity amounts to only approximately $200 per month, which is credited against the Authority's monthly "firm capacity charge" to Brazos Electric of $45,600 per month (apparently reduced to $22,800 as of August 2007).

At most, the PSC anticipates that the Authority will consume some of its own hydroelectrically generated power as Station Use and that this power will be routed to

---

[1] Article 8 of the PSC concerns Brazos Electric's obligation to furnish, install, and maintain its lines, substation, and electrical facilities on its side of the point of delivery, and it also provides for a lease and easement to Brazos Electric for those lines and substation. The lease itself reserves to the Authority the right to access the substation land to install accessory electrical equipment on the leased premises to take and use power for Station Use. The testimony does show that Brazos Electric provided the lines, transformers, and meters from Brazos Electric's substation to supply the power for Station Use, but nothing in the PSC contractually obligated Brazos Electric to do so.

the Facility through Brazos Electric's substation on the Facility's premises.[2]  The PSC specifically provides that Brazos Electric will be credited for the Station Use power. When the Facility was not generating hydroelectric power, which the record shows has been a substantial amount of the time since 1991, Brazos Electric has been allowing the Authority to use power from the delivery point (as the Authority describes it, "allowing the Authority to use power that it had originally provided," and for which the Authority credits to Brazos Electric).  No provision in the PSC contractually requires Brazos Electric to provide the Facility with power when the Facility is not generating power.  Also, nothing in the PSC requires the Authority to obtain the power it needs for its Facility from Brazos Electric, and the record shows that the Authority could obtain retail electricity from the local retail electricity provider.

The PSC's "central purpose" is indisputably the Authority's sale of hydroelectric power to Brazos Electric, not vice-versa.  *See East Houston Estate Apartments, L.L.C. v. City of Houston*, 294 S.W.3d 723, 736 (Tex. App.—Houston [1st Dist.] 2009, no pet.).  The goods or services for the authority's Station Use[3] are, therefore, at best indirect and attenuated benefits to the Authority under the PSC that do not result in a section 271.152 waiver of governmental immunity.[4]  *See Berkman,* --- S.W.3d at ---, 2009 WL

---

[2] Brazos Electric also provides metering and transformers for Station Use power, but nothing in the PSC specifically and contractually obligates it to do so.

[3] It is noteworthy that Brazos Electric's claims have nothing to do with the alleged goods or services that it provides to the Authority.

[4] In *Berkman*, we quoted approvingly from *East Houston*:
> If every contract that confers some attenuated benefit on a governmental entity constitutes a contract for a "service," the limitation of contracts covered by section 271.152 to "contract for goods or services provided to the entity" loses all meaning.

3646011 at *3; *East Houston,* 294 S.W.3d at 736. We hold that Brazos Electric's claims for breach of the PSC and the FCA do not come within section 271.152's waiver. The trial court erred in denying the Authority's plea to the jurisdiction. We sustain issue (a.) and need not address the Authority's other two issues.

We reverse the trial court's order denying the Authority's plea to the jurisdiction and render judgment dismissing Brazos Electric's action against the Authority for lack of subject-matter jurisdiction. TEX. R. APP. P. 43.2(c).

REX D. DAVIS
Justice

Before Chief Justice Gray,
      Justice Reyna, and
      Justice Davis
Order reversed and case dismissed
Opinion delivered and filed June 23, 2010
[CV06]

---

> Nothing in the statute nor in its legislative history supports such an interpretation. Had the legislature intended to waive immunity from liability for every contract participated in by the State, it could have done so. We must interpret the limitation as having some meaning.

*Berkman,* --- S.W.3d at ---, 2009 WL 3646011, at *3 (quoting *East Houston,* 294 S.W.3d at 736).