

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-15-00075-CV

**SAN ANTONIO HOUSING AUTHORITY**,
Appellant

v.

**SERENTO APARTMENTS, LLC**,
Appellee

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2014-CI-16503
Honorable Stephani A. Walsh, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:    September 30, 2015

REVERSED AND RENDERED

Appellant San Antonio Housing Authority ("SAHA") appeals the trial court's denial of its plea to the jurisdiction based on governmental immunity. Because we conclude the trial court erred in denying SAHA's plea to the jurisdiction, we reverse the trial court's order and render judgment dismissing the cause for lack of jurisdiction.

**BACKGROUND**

In October 2014, Appellee Serento Apartments, LLC ("Serento") sued SAHA for breach of contract. The petition states that a copy of the contract was attached; however, no copy was ever filed, and it is therefore not part of the appellate record.

Serento's original petition alleged that Serento and SAHA entered into a written federal Housing Assistance Program contract ("the contract") under the Section 8 Moderate Rehabilitation Program, which provides rental assistance for low-income families. The Housing Assistance Program is overseen by the U.S. Department of Housing and Urban Development ("HUD"), but administered locally by SAHA. Under the Section 8 Moderate Rehabilitation Program, SAHA would refer to Serento eligible families from its waiting list, and Serento would screen and select from those eligible families. The selected family and Serento would then enter into a separate and legally binding apartment lease contract. SAHA would pay a sliding scale portion of the family's monthly rent directly to Serento.

Serento further alleged that the contract was renewable each year for a one-year period, and under the contract, Serento was prevented from terminating the tenancy of any Section 8 Moderate Rehabilitation tenant on the basis that the current dwelling lease had expired. Pursuant to the contract, Serento was allowed to terminate the lease of a Section 8 Moderate Rehabilitation tenant only for serious or repeated violations of the lease; violation of federal, state, or local laws; or other good cause.

The contract, according to Serento's petition, required SAHA to notify Serento sixty days prior to the expiration of the contract that assisted families would be issued Housing Choice Vouchers. These families could either remain in their current Section 8 Moderate Rehabilitation unit or relocate to a unit of their choice on the private rental market if the owner agreed to rent the

unit to the family under the Housing Choice Voucher Program. Serento alleged that SAHA materially breached this specific term of the contract.

According to Serento's petition, under the contract, SAHA could refuse to renew an expiring contract if SAHA or HUD determined that Serento had engaged in material adverse financial or managerial actions or omissions, which was defined as materially failing to maintain the property according to housing quality standards after receipt of notice and a reasonable opportunity to cure. Serento alleged that SAHA materially breached the contract by failing to afford Serento a reasonable time period in which to make repairs in a good and workmanlike manner in accordance with local and state regulations.

Serento further alleged that it received notice from SAHA of nonrenewal of the contract and SAHA's stated purpose of nonrenewal that specific repairs were needed. According to Serento, SAHA breached the contract by failing to give Serento a reasonable opportunity to cure the specific repairs identified by SAHA. SAHA "began to forward Notice[s] of Abatement of HAP Contract" to Serento's tenants, "alleging as its basis that 'all repairs had not been completed.'" The notice instructed Serento's tenants to report to SAHA's office within ten days to obtain referrals to new units. Serento's tenants "were further informed they could submit new paperwork for their current unit once [Serento] complied with unit quality standards." For example, SAHA conducted inspections of several units on September 1, 2010, and subsequently conducted a required follow-up inspection "barely a month later on October 8, 2010." Serento alleged that because "of the extensive work that needed to be done, materials ordered and received, and work permits obtained, [SAHA] failed to afford [Serento] a reasonable time to make these extensive and time consuming repairs." Serento alleged that it had provided proof to SAHA "of its good-faith intent to substantially complete the repairs as quickly as possible."

According to Serento's petition, it asked SAHA for an extension "as the parties had previously discussed and agreed to," but less than two weeks later, Serento "discovered that [SAHA] was actively encouraging all tenants to breach their individual and separate lease agreements with [Serento], by moving out of [Serento]'s apartment complex by the end of the month." Serento alleged that SAHA threatened to cancel the tenants' vouchers if they did not move. Serento alleged that in doing so, SAHA breached the HAP contract. As a result of SAHA's actions, Serento alleged it incurred damages in excess of $300,000.

In response to these allegations contained in Serento's petition, SAHA filed a plea to the jurisdiction claiming governmental immunity. According to SAHA, as a public housing authority, it is a local governmental entity that is immune from suit except to the extent immunity has been clearly and specifically waived by the Texas Legislature. Serento then filed an amended petition that did not allege any new facts but added a paragraph stating that "[t]he Court ha[d] jurisdiction over this breach of contract suit because the Texas Legislature waived Defendant's immunity form [sic] suit when it enacted Texas Local Government Code [§] 271.152."[1] At the hearing on SAHA's plea to the jurisdiction, no evidence was introduced; counsel for both parties merely argued the merits of their respective positions to the trial court.[2] The trial court denied SAHA's plea to the jurisdiction, and this interlocutory appeal followed.

### PLEA TO THE JURISDICTION

A plea to the jurisdiction challenges the trial court's subject matter jurisdiction to hear the case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The party suing the

---

[1] Although the amended petition again claimed a copy of the contract between the parties was attached as Exhibit A, no copy was ever filed.

[2] We note that in its appellee's brief, Serento requests that this court take judicial notice "of the guidebook propagated by the U.S. Department of Housing and Urban Development." We decline to do so and will only consider what was properly before the trial court. In its appellee's brief, Serento also points to language in a standard HUD contract. No such HUD contract was introduced in evidence at trial and is not part of the appellate record. Therefore we will not consider it on appeal.

governmental entity bears the burden of affirmatively showing that the trial court has jurisdiction to hear the cause. *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). In deciding a plea to the jurisdiction, a court may not weigh the merits of the plaintiff's claims, but should consider only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *Harris Cnty. Hous. Auth. v. Rankin*, 414 S.W.3d 198, 201 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

On appeal, we review whether a trial court has subject matter jurisdiction de novo. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). We give no deference to the trial court's decisions regarding legal issues, and we take the allegations in the petition as true and construe them in favor of the pleader.[3] *Harris Cnty.*, 414 S.W.3d at 201.

Governmental immunity protects political subdivisions of the state from liability and lawsuits unless the state consents. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Governmental immunity has two components—immunity from liability and immunity from suit. *Id.* A unit of state government is immune from suit and liability unless the state consents. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). A governmental entity that enters into a contract waives immunity from liability and voluntarily binds itself to the contractual terms, but the entity does not thereby waive immunity from suit. *Tooke*, 197 S.W.3d at 332. As a public housing authority organized pursuant to the constitution and laws of the State of Texas, SAHA is a local governmental entity entitled to immunity from suit in the performance of its governmental functions unless the State of Texas waived such immunity. *See id.*

---

[3] As noted previously, in this case no evidence of jurisdictional facts was introduced at the hearing, and the contract at issue is not part of the appellate record. Thus, we consider whether the trial court erred in denying SAHA's plea to the jurisdiction by looking only at Serento's amended petition.

In its amended petition, Serento alleged that section 271.152 of the Texas Local Government Code waives immunity in this case. Section 271.152 provides the following:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

TEX. LOC. GOV'T CODE § 271.152 (West 2005). "Contract subject to this subchapter" is "a written contract stating the essential terms of the agreement *for providing goods or services to the local governmental entity* that is properly executed on behalf of the local governmental entity." *Id.* § 271.151(2)(A) (West Supp. 2014) (emphasis added). SAHA argues that section 271.152 is not applicable because pursuant to its contract with Serento, no goods or services were provided to SAHA.

As noted, Serento had the burden in the trial court to show that SAHA's governmental immunity had been waived. *See Miller*, 51 S.W.3d at 587. Because no evidence was introduced at the hearing and the actual contract was not filed, we must look at the facts alleged in its amended petition to determine whether Serento met its burden. Serento's amended petition alleged that SAHA was the local administrator for HUD's HAP program, and the contract entered into between SAHA and Serento was for the purpose of providing rental assistance for low-income families. Serento's amended petition further alleged that pursuant to the contract, SAHA referred eligible families to Serento. For those families who were selected by Serento, Serento and the family would enter into a separate agreement. SAHA would then pay a sliding scale portion of the family's monthly rent directly to Serento. Serento argues in its brief that these facts allege services provided to SAHA from Serento: providing low-income housing and maintaining the housing in compliance

with SAHA's requirements.[4] According to Serento, "[t]he short truth is that [Serento] provides a service of providing and operating low-income housing so that SAHA does not have to build more housing courts." In response, SAHA argues that the central purpose of the contract was to facilitate federal funds to a private entity on behalf of low-income families and that SAHA, in its governmental function and capacity, was merely a conduit of federal funds. Thus, SAHA argues no goods or services were provided directly to SAHA, and there is no waiver of governmental immunity under section 271.152.

In support, SAHA cites the First Court of Appeals decision in *East Houston Estate Apartments, LLC v. City of Houston*, 294 S.W.3d 723 (Tex. App.—Houston [1st Dist.] 2009, no pet.). In that case, East Houston Apartments entered into a loan agreement with the City of Houston so that East Houston Apartments could rehabilitate a 130-unit apartment complex. *Id.* at 726. Funding for the City's loan to East Houston Apartments was provided to the City

> pursuant to a HOME Investment Partnership Agreement ("HOME Agreement") between the City and the United States of America, acting by and through its Department of Housing and Urban Development, for federal funding of a HOME Investment Partnerships Program under the National Affordable Houston Act of 1990, as amended ("HOME Program").

*Id.* East Houston Apartments sued the City for breach of contract, alleging that the City had wrongfully failed to release to it all of the funds allocated by the loan agreements. *Id.* at 728. In response to the lawsuit, the City filed a plea to the jurisdiction based on governmental immunity. *Id.*

---

[4] Serento also claims in its brief that it provided the service of "if necessary" "evict[ing] tenants if they do not conform with the rules of [SAHA]." In its amended petition, however, Serento did not allege that it evicted tenants if they did not comply with SAHA's rules. Instead, Serento's amended petition alleged that it was "entitled to terminate the lease of a Mod Rehab tenant, either at the time of renewal or anytime during the one-year renewal period, only for serious or repeated violation of the lease, violation of applicable Federal, State, or Local laws, or other good cause." It appears that in its brief, Serento is referencing a provision *in the separate lease agreement between Serento and the low-income families*. SAHA was not a party to this separate leasing agreement; thus, this separate leasing agreement cannot be a basis for SAHA waiving immunity from suit pursuant to section 271.152.

On appeal, the First Court of Appeals considered whether the loan agreement constituted a contract that would waive governmental immunity under section 271.152. *Id.* at 734. East Houston Apartments argued that it provided to the City the service of rehabilitating the apartment complex, and because the terms of the loan agreement restricted the amount of rent it could charge for a portion of its units for a period of years, it also provided low-income housing for City residents. *Id.* The First Court of Appeals rejected this argument, concluding that these services were not the type of service "envisioned by section 271.152." *Id.* at 736. According to the court, while it was clear that the "City would benefit in a general way from having East Houston's apartment units refurbished and from the availability of more housing for low-income families, nothing in the contract obligated East Houston to provide any municipal service directly to the City." *Id.* "The central purpose of the agreement between the City and East Houston was to facilitate a loan of money from the City's portion of federal funds and from private funds to a private entity for the purpose of renovating East Houston's empty apartment building." *Id.* "The City was thus a conduit of federal funds and a facilitator of the project, but no services were provided directly to the City." *Id.*

The First Court of Appeals further reasoned that the plain meaning of section 271.152 supported its conclusion that section 271.152 did not apply to contracts, like the one at issue, "in which the benefit that the City would receive is an indirect, attenuated one." *Id.* The court explained that section 271.152 "is clearly limited as to which contracts fall under the waiver of immunity from suit." *Id.* "If every contract that confers some attenuated benefit on a governmental entity constitutes a contract for a 'service,' the limitation of contracts covered by section 271.152 to 'contract for goods or services provided to the entity' loses all meaning." *Id.* The court explained that "[n]othing in the statute nor in its legislative history supports such an interpretation." *Id.* The court reasoned that "[h]ad the legislature intended to waive immunity from liability for every

contract participated in by the State, it could have done so." The court thus concluded that it "must interpret the limitation as having some meaning." *Id.*

We find this reasoning by the First Court of Appeals and its analysis of section 271.152 persuasive. Like the First Court of Appeals, we interpret section 271.152 to not waive governmental immunity if the contract at issue merely confers some attenuated benefit on a governmental entity. We conclude the services provided to SAHA under the contract as alleged by Serento's petition was indirect and attenuated. As in *East Houston*, SAHA was merely the conduit of federal funds and did not directly receive the benefit of services provided by Serento. We therefore hold that Serento did not meet its burden of showing that SAHA had waived its governmental immunity pursuant to section 271.152.

Finally, in its brief, Serento moves for sanctions against SAHA, arguing that "[i]t should be considered unconscionable that [SAHA] would file a plea to the jurisdiction, and an interlocutory appeal without even examining the contract which is the main issue of the case." Having concluded that SAHA's plea to the jurisdiction should have been granted, we deny Serento's motion for sanctions.

## CONCLUSION

Because Serento did not meet its burden of showing a waiver of governmental immunity, we reverse the order of the trial court and render judgment dismissing the cause for lack of subject-matter jurisdiction.

Karen Angelini, Justice