**Affirm; Reverse and Remand and Opinion Filed March 20, 2020**



**In The**
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-00278-CV

## REBECCA AMADOR, Appellant
## V.
## THE CITY OF IRVING, TEXAS, Appellee

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-02425**

## MEMORANDUM OPINION
Before Justices Osborne, Partida-Kipness, and Pedersen, III
Opinion by Justice Pedersen, III

Rebecca Amador appeals an order that granted a plea to the jurisdiction in favor of the City of Irving, Texas, the appellee, on governmental immunity grounds. The central issue in this appeal is whether a legislative waiver of immunity applies to Amador's claims. We affirm in part and reverse and remand in part.

# I.
# Background

In 2016, Amador enrolled in a Housing Restoration Program (the program) offered through the City[1] and funded by a grant awarded by the United States Department of Housing and Urban Development. The program provides loans to low-income homeowners to refurbish their homes using City-approved contractors under City supervision.

The responsibilities of Amador, the City, and her contractor under the program are defined by several documents, which we will refer to collectively as "the subject contract." Namely, on February 23, 2016, Amador signed a copy of the City's Policies and Procedures (the policies) given to her by a City representative.[2] The policies explain the program in detail, including the processes for selecting contractors and the responsibilities of the homeowner, the City, and the contractor with respect to a given restoration project. Pertinent to this case, the policies require the City to "ensure that all work is completed at the highest quality level and [in the] most workmanlike manner possible."

---

[1] Participants in the program include (i) the City's Planning and Community Development Department, and (ii) the Housing and Human Services Board, which is authorized and appointed by the Irving City Council. In this opinion, we will refer to these entities collectively as "the City."

[2] Amador was allegedly given two versions of the policies, one dated 2010 and the other dated 2014. She claims that the underlying obligations of the City and the contractor are substantively the same in both versions.

On May 17, 2016, Amador signed a loan agreement with the City in the principal amount of $50,657.00 to finance Amador's obligation under the program. Of this amount, $20,262.80 is non-deferred and interest bearing, resulting in 180 payments of $121.27, or a total of $21,828.92. The remaining $30,394.20 is a deferred, non-interest bearing loan, forgiven at a rate of 1/15th per year. However, Amador must repay this portion of the loan in full should she move out of her home or choose to sell it.

The program utilizes a list of preferred contractors who have been vetted by the City and have agreed to its terms, practices, and construction standards. All preferred contractors are provided a "Work Write Up" for a given project and are invited to bid on the project. Upon its receipt and review of the bids, the City presents all eligible bids to the homeowner. The homeowner may then choose a contractor from any of the eligible bids. Should the homeowner wish to utilize a contractor who is not on the preferred contractor list, the contractor must agree to become a preferred contractor and agree to all fees and requirements.

On May 17, 2016, Amador executed a Housing Rehabilitation Mechanic's Lien Contract (the HR Contract) with Javier Villagomez, the contractor that she selected to restore her home. Villagomez immediately transferred the lien to the City, and Amador alleges on information and belief that the City continues to hold the lien.

Amador is not satisfied with Villagomez's restoration of her home. She claims that he performed substandard work on the foundation, leaving the home unleveled and causing its wood floors, walls, and doors to crack, buckle, and/or tilt off-level. According to Amador, Villagomez also painted the home's exterior with a dark gray paint that is inappropriate for use on siding, particularly on siding frequently exposed to hot weather. As a result, the siding on the east and west sides of Amador's home melted, resulting in a contortion and shrinkage. In sum, Amador claims that Villagomez's restoration work in many ways left her home in a worse condition than it was before the supposed "repairs" were performed.

Amador alleges on information and belief that the City was aware, or should have been aware, that Villagomez was not competent, licensed, bonded, or insured. She also claims that she informed the City of the problems with Villagomez's work and that, in response, the City's "staff . . . repeatedly told [her] that some aspects of the work would be corrected." Notwithstanding these assurances, the City allegedly paid Villagomez in full and did nothing to help fix the damage.

On February 20, 2018, Amador sued the City and Villagomez. Her original petition asserts: (i) against both defendants, claims for breach of contract and negligence, and (ii) against the City, claims for fraudulent inducement and violations of the Deceptive Trade Practices Act (DTPA). *See* TEX. BUS. & COM. CODE ANN. §§ 17.41–.63. Amador sought damages and a declaratory judgment that the subject agreements be declared void or voidable at her election. *See* TEX. CIV. PRAC. & REM.

CODE ANN. §§ 37.001–.011 (Uniform Declaratory Judgments Act). She also sought to recover the attorney's fees that she incurred while prosecuting her contract claim, *see id.* § 38.001(8), and her DTPA claim, *see* BUS. & COM. § 17.50(d).

The City and Villagomez both denied Amador's allegations. The City's answer also included a plea to the jurisdiction. This plea was based on governmental immunity, and it asserted that Amador had not met her burden to plead facts invoking the district court's jurisdiction.

On June 15, 2018, the district court held a hearing on the City's plea and then signed an order that granted the plea and dismissed the City from Amador's suit. A little over three months later, Villagomez filed a third-party petition against Brothers Foundation LLC and Everardo Anguiano d/b/a/ All Electrical Services, who were subcontractors retained by Villagomez to assist with Amador's restoration project. Amador also filed an amended petition, her current live petition, which added a gross negligence claim against Villagomez.

In January 2019, Amador reached a settlement with Villagomez. She then filed a motion to non-suit her claims against Villagomez with prejudice, and Villagomez also sought to non-suit his third party claims without prejudice. The district court signed orders granting the motions to non-suit. These orders rendered the court's June 15 order final, and Amador perfected this appeal.

## II.
## Analysis

The City's plea to the jurisdiction urged that it is immune from Amador's suit. Political subdivisions of the State possess governmental immunity from suit unless the Legislature has waived that immunity. *Byrdson Servs., LLC v. Se. Tex. Reg'l Planning Comm'n*, 516 S.W.3d 483, 485 (Tex. 2016). A legislative waiver of immunity must be undertaken "'by clear and unambiguous language,'" and thus "statutory waivers of immunity are to be construed narrowly." *Texas Adjutant General's Office v. Ngakoue*, 408 S.W.3d 350, 353 (Tex. 2013) (quoting TEX. GOV'T CODE ANN. § 311.034).

One such waiver is found in section 271.152 of the Local Government Code, which states:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

TEX. LOC. GOV'T CODE ANN. § 271.152. "According to its plain terms, the statute by clear and unambiguous language waives a governmental entity's immunity from suit for breach of written contract." *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011).

Amador asserts two reasons that, in her view, the district court erred in granting the City's plea to the jurisdiction. In her first issue, she contends that the

subject contract waived the City's governmental immunity pursuant to section 271.152. In her second issue, Amador argues that, even if the City's immunity was not waived, she may still seek a declaration of her prospective, as opposed to her retrospective, contract obligations. The City disagrees with Amador's assertions and also asserts that it is immune from Amador's breach of contract claim because there is no "balance due and owed" by the City under the contract. *See id.* § 271.153(a)(1).

## A.  Standard of Review

An assertion of governmental immunity implicates a court's subject matter jurisdiction, and this immunity is properly asserted in a plea to the jurisdiction. *Harris Cty. v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018). In such a plea, a defendant may challenge the plaintiff's pleadings, the existence of jurisdictional facts, or both. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018).

### 1.  Challenging the pleadings

The plaintiff bears the initial burden to allege facts demonstrating jurisdiction. *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010); *Texas Department of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Whether a plaintiff has met this burden is a question of law that we review de novo. *Miranda*, 133 S.W.3d at 226. We must construe the pleadings liberally in the plaintiff's favor and look to the pleader's intent. *Hayes*, 327 S.W.3d at 116; *Miranda*, 133 S.W.3d at 226. If the pleadings affirmatively negate the existence of jurisdiction,

then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Miranda*, 133 S.W.3d at 227.

On the other hand, if the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, then the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Id.* at 226–27. However, this right has its limits. "If a plaintiff has been provided a reasonable opportunity to amend after a governmental entity files its plea to the jurisdiction, and the plaintiff's amended pleading still does not allege facts that would constitute a waiver of immunity, then the trial court should dismiss the plaintiff's action." *Harris Cty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004).

### 2. Challenging the existence of jurisdictional facts

When a plea to the jurisdiction challenges the existence of jurisdictional facts, we must consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues presented. *Miranda*, 133 S.W.3d at 227. Under this scenario, the standard of review mirrors that of a traditional motion for summary judgment. *Clark*, 544 S.W.3d at 771; *Miranda*, 133 S.W.3d at 228. In other words, the defendant has the burden to establish that it is a governmental entity entitled to governmental immunity. *Lubbock Cty. Water Control and Improvement Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 305 (Tex. 2014). If it satisfies that burden, the burden then shifts to the plaintiff to establish, or at least to raise a fact issue on,

a waiver of immunity. *Id.* In determining whether a material fact issue exists, we must take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor. *Clark*, 544 S.W.3d at 771; *Miranda*, 133, S.W.3d at 228. However, our analysis cannot disregard evidence necessary to show context, and we cannot disregard evidence and inferences unfavorable to the non-movant if reasonable jurors could not. *Clark*, 544 S.W.3d at 771.

When the evidence of jurisdictional facts is undisputed, our determination of whether such evidence establishes a trial court's jurisdiction is a question of law that we review de novo. *Miranda*, 133 S.W.3d at 226. In some cases, disputed evidence of jurisdictional facts that also implicate the merits of the case may require resolution by the finder of fact. *Id.*

### 3. Application

Here, the City's plea challenged the sufficiency of Amador's petition to invoke the district court's jurisdiction. Accordingly, we must determine whether Amador met her pleading burden to establish a legislative waiver of governmental immunity. As discussed below, Amador met this burden with respect to her breach of contract claim, but she did not meet this burden as to her other claims.

The City also offered exhibits in support of its plea, including a copy of the HR Contract and copy of the transfer of lien. Although the City's initial burden was only to establish that it is a governmental entity entitled to governmental immunity,

*see Church & Akin, L.L.C.*, 442 S.W.3d at 305, the foregoing exhibits demonstrate a legislative waiver of immunity with respect to Amador's breach of contract claim, as explained below.

## B. Breach of Contract Claim

### 1. Goods or services

Section 271.152 applies to "a contract subject to this subchapter," LOC. GOV'T § 271.152, which the statute elsewhere defines as including "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity," *id.* § 271.151(2)(A). Amador's first issue contends that the subject contract meets the foregoing definition, and thus, the City's immunity has been waived. The City does not dispute that the contract "stat[ed] the essential terms of the agreement" and "[was] properly executed on behalf of the [City].' *Id.* Thus, the central issue that we must determine is whether the contract was an "agreement for providing goods or services to the [City]." *Id.*

The term "service" in Chapter 271 "includes generally any act performed for the benefit of another under some arrangement or agreement whereby such act was to have been performed." *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 839 (Tex. 2010). "The services provided need not be the primary purpose of the agreement." *Id.* However, Chapter 271 does not extend to "'contracts in which the benefit that the local governmental entity would receive is an indirect,

attenuated one.'" *Id.* (quoting *Berkman v. City of Keene*, 311 S.W.3d 523, 527 (Tex. App.—Waco 2009, pet. denied)).

### a. Amador's arguments

Amador notes that the City owns an interest in her property in the form of the lien transferred by Villagomez. *See Sec. State Bank & Tr. v. Bexar Cty.*, 397 S.W.3d 715, 721 (Tex. App.—San Antonio 2012, pet. denied) ("A lienholder possesses a legally protected property interest.").[3] Moreover, in the event of a default by Amador, the lien gives the City authority to sell the property at auction and receive a commission. Based on these facts, in Amador's view, the City directly benefitted from the services that Villagomez performed on the property pursuant to the contract. Under this reasoning, when Villagomez performed services on Amador's home, those services were provided to both Amador and the City.

Amador claims that the City's direct benefit is further enhanced by its receipt of interest on a portion of the loan's principal amount*, cf. Schoffstall v. City of Corpus Christi*, No. 13-13-00531-CV, 2014 WL 4249801, at \*5 (Tex. App.— Corpus Christi–Edinburg Aug. 25, 2014, no pet.) (mem. op.) (concluding that "zero interest" loan agreement did not involve provision of goods or services directly to

---

[3] *See also John Deloach Enters., Inc. v. Telhio Credit Union, Inc.*, 582 S.W.3d 590, 596 (Tex. App.—San Antonio 2019, no pet.) ("[A] first lienholder generally has sufficient interest in the property to sue a third party for conversion."); *State Bank of Omaha v. Means*, 746 S.W.2d 269, 272 (Tex. App.—Texarkana 1988, writ denied) ("A mortgage is a substantial property interest that is entitled to the constitutional protection of due process."); *cf. Flag-Redfern Oil Co. v. Humble Expl. Co.,* 744 S.W.2d 6, 8 (Tex. 1987) ("The mortgagor retains the legal title and the mortgagee holds the equitable title.").

city), and by the fact that the City's lien was protected by the insurance that the contract required Amador to obtain on the property.

### b. The City's response

The City counters that it was only a conduit for the federal funds used to rehabilitate Amador's home. Under this logic, Amador, not the City, directly benefitted from Villagomez's goods and services, and the City received merely an indirect, attenuated benefit.

### c. Sister court cases

The City cites two sister court cases to support its position that section 271.152 does not apply here.

In *East Houston Estate Apartments, L.L.C. v. City of Houston*, a city loaned federal and private funds to a property owner to rehabilitate an apartment complex within the city. 294 S.W.3d 723, 726, 736–37 (Tex. App.—Houston [1st Dist.] 2009, no pet.). While the city might benefit in a general way from refurbished apartments and low-income housing, our sister court concluded that nothing in the contract obligated the property owner to provide any municipal service directly to the city. *Id.* at 736. Rather, the city was simply a conduit of federal funds and a facilitator of the project. *Id.*

In *San Antonio Housing Authority v. Serento Apartments, LLC*, an apartment complex owner and the San Antonio Housing Authority (SAHA) entered into a written federal Housing Assistance Program contract under the Section 8 Moderate

–12–

Rehabilitation Program, which provides rental assistance for low-income families. 478 S.W.3d 820, 822 (Tex. App.—San Antonio 2015, no pet.). Under this program, SAHA would refer to Serento eligible families from a waiting list, and Serento would screen and select from those eligible families. *Id.* The selected family and Serento would then enter into a separate apartment lease contract. *Id.* SAHA would pay a sliding scale portion of the family's monthly rent directly to Serento. *Id.*

Serento asserted that the foregoing contract "provid[ed] a service providing and operating low-income housing so that SAHA d[id] not have to build more housing courts." *See id.* at 825. Our sister court disagreed. The court applied the reasoning from *East Houston* and concluded that SAHA was merely the conduit of federal funds and did not directly benefit from the services provided by Serento. *Id.* at 826. Under this circumstance, Serento did not meet its burden of showing that SAHA had waived its governmental immunity under section 271.152. *Id.*

The City asserts that the foregoing cases support its position that the subject contract provided the City with only an indirect benefit. In contrast, Amador argues that these cases are distinguishable. According to Amador, they "did not consider whether repairs to property in which the governmental entity held a *valid legal interest* constituted a service to the [entity], particularly where the entity enjoyed the right to collect interest or foreclose on the property" and the right to "require[ ] that insurance be maintained on the property to protect the [entity's] interests."

The City also acknowledges *City of El Paso v. High Ridge Construction, Inc.*, 442 S.W.3d 660 (Tex. App.—El Paso 2014, pet. denied). In that case, the City of El Paso entered into a contract with High Ridge to provide weatherization services "on behalf of the City"—including the installation of emergency-efficient appliances—in qualified low-income residential properties. *Id.* at 663–64, 669. Our sister court held that High Ridge's services did not provide a direct benefit to the City, and therefore, section 271.152 did not apply. *Id.* at 669–70. This did not end the court's inquiry, however, because the weatherization contract also required High Ridge to provide a one-year warranty to the client and to the City for the work completed and to indemnify and defend the City from any claims arising from High Ridge's activities under the contract. *Id.* at 670. The warranty and indemnity term provided a direct benefit to the City that qualified as the provision of services under section 271.152. *Id.* (citing *Kirby Lake*, 320 S.W.3d at 839 (agreement between residential developers and city water control and improvement district authority entailed the provision of goods or services under Section 271.152 where developers agreed to construct, develop, lease, and bear all risk of loss or damage to water and sewer facilities)).

In the City's view, *City of El Paso* is distinguishable because, unlike in this case, the High Ridge contract expressly stated that its services were provided "on behalf of the City." *Id.* at 669. Amador replies that the foregoing contract language was not the basis of the court's decision and that requiring such language for section 271.152 to apply would contravene the rule that "[t]he services provided . . . need not be the primary purpose of the agreement." *Kirby Lake*, 320 S.W.3d at 839. Amador also notes that the court's holding in *City of El Paso* rested on the warranty

and indemnification term, *id.* at 670, and she urges that a similar term is present in this case. Thus, Amador views *City of El Paso* as supporting her position that section 271.152 applies here.

### d. Analysis

Amador's petition alleges that the subject contract provides a service to the City in the form of (i) the lien assigned by Villagomez, and (ii) the obligation undertaken by Amador to pay interest on her loan from the City. Stated another way, Villagomez's service of repairing Amador's home was also a service to the City by virtue of its property interest in the home. Moreover, Amador's payment of interest to the City provided it with a direct benefit. *See Kirby Lake Dev., Ltd.*, 320 S.W.3d at 839. The City cannot be considered a mere conduit of federal funds because it is also earning interest on these funds. The foregoing allegations were sufficient to invoke the district court's jurisdiction pursuant to section 271.152.

In addition, the City's evidence established that section 271.152 applies to this case. Specifically, the HR Contract contains an indemnity term under which Villagomez agreed to indemnify, release, and hold the City harmless from all claims for injury or death to any person, or for damage to any property, arising out of, or in connection with, Villagomez's activities related to the contract. This term, as well as the terms referenced above, provided the City with a direct benefit. *Kirby Lake*, 320 S.W.3d at 839; *City of El Paso*, 442 S.W.3d at 670. Accordingly, the subject contract was an agreement for providing services to the City. *See* LOC. GOV'T §§ 271.151(2)(A), 271.152.

## 2. Balance Due and Owed

Section 271.152 is "subject to the terms and conditions of this subchapter," LOC. GOV'T § 271.152, and such "terms and conditions" incorporate the limitations set forth in section 271.153, *id.* § 271.153; *Zachry Constr. Corp. v. Port of Houston Auth. of Harris Cty.*, 449 S.W.3d 98, 108–109 (Tex. 2014). Thus, section 271.152's waiver of immunity from suit does not extend to claims for damages not recoverable under section 271.153. *Zachry*, 449 S.W.3d at 110.

Based on the foregoing, the City invokes section 271.153 as an additional ground to support the district court's grant of its jurisdictional plea. Under this section:

> [T]he total amount of money awarded in an adjudication brought against a local governmental entity for breach of a contract subject to this subchapter is limited to . . . (1) the balance due and owed by the local governmental entity under the contract.

LOC. GOV'T § 271.153.

A "balance due and owed" is "simply the amount of damages for breach of contract payable and unpaid." *Zachry*, 449 S.W.3d at 111. "Direct damages for breach—the necessary and usual result of the defendant's wrongful act—certainly qualify." *Id.* (citation and internal quotation marks omitted)); *see also Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997) ("Direct damages compensate . . . for the loss that is conclusively presumed to have been foreseen by the defendant from his wrongful act."). Such damages need not be set

out in the contract to be "due and owed." *Zachry*, 449 S.W.3d at 113. In contrast, consequential damages—"damages that result naturally, but not necessarily, from the defendant's wrongful acts"[4]—are not recoverable barring an exception not applicable here. LOC. GOV'T § 271.153(b)(1); *Zachry*, 449 S.W.3d at 112, 114 & n.71.[5]

The City asserts that Amador has not alleged a balance due and owed. We disagree. Amador alleges that the contract obligated the City to "ensure that all work performed is completed in the highest quality and most workmanlike manner." Her petition claims that the repairs performed by Villagomez were incomplete and "utterly deficient." Moreover, according to Amador's allegations, the City "fail[ed] to ensure that necessary warranty work was completed" and made no effort to remedy Villagomez's poor workmanship. The unfinished work purportedly includes (i) an unleveled foundation that will cost $7,725 to repair, (ii) a master bathroom still in disrepair, and (iii) several items that need to be replaced, such as the windows and the carpet in the master bedroom. In addition, the improper work purportedly includes (i) siding that suffered $18,482 in damage, and (ii) several incorrectly

---

[4] *See Zachry*, 449 S.W.3d at 114 n.71 (quoting *Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 901 (Tex. 2011)).

[5] Section 271.153(b)(1) prohibits recovery of consequential damages "except as expressly allowed under Subsection (a)(1)." *Id.* Subsection (a)(1), in turn, defines the "balance due and owed" to include "any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration." *Id.* § 271.153(a)(1). This case does not involve such delays or acceleration.

–17–

installed items, such as light switches wired in an unsafe manner and vinyl flooring that was not properly glued down. Amador seeks damages to remedy these defects.

The foregoing harms directly and necessarily resulted from the City's breach of the contract. *See Zachry*, 449 S.W.3d at 111. As such, Amador has alleged a "balance due and owed." *See* LOC. GOV'T § 271.153.

Accordingly, we reverse the district court's order granting the City's plea to the jurisdiction insofar as that order dismissed Amador's breach of contract claim.

## C. Non-Contract Claims

Amador does not cite any legislative waiver of immunity regarding her fraudulent inducement[6] or DTPA claims,[7] nor does she argue that the legislative waiver of immunity for negligence claims[8] applies here. *See also* LOC. GOV'T § 271.157 (providing that subchapter I of Chapter 271 does not waive immunity for negligent or intentional torts).

She instead urges that, because section 271.152 waived immunity with respect to her breach of contract claim, the district court need not separately determine

---

[6] *Cf.* CIV. PRAC. & REM. § 101.057(2) (providing that Tort Claims Act does not apply to a claim arising out of an intentional tort).

[7] *Cf. City of Wylie v. Taylor*, 362 S.W.3d 855, 864–65 (Tex. App.—Dallas 2012, no pet.) ("After analyzing [Business and Commerce Code section 17.45(3)], we conclude the Legislature has not therein expressed a clear and unambiguous waiver of governmental immunity." (citation and internal quotation marks omitted)); *Kojo Wih Nkansah v. Univ. of Tex. at Arlington*, No. 02-10-00322-CV, 2011 WL 4916355, at *4 (Tex. App.—Fort Worth Oct. 13, 2011, pet. denied) (mem. op.) ("The DTPA does not clearly and unambiguously provide for a waiver of immunity from suit for governmental units.").

[8] *See* CIV. PRAC. & REM. § 101.021 (waiving immunity in a negligence suit if the action involves (i) property damage, personal injury, or death arising from the operation or use of a motor vehicle, or (ii) personal injury or death caused by a condition or use of tangible personal or real property).

whether it has subject-matter jurisdiction over her non-contract claims. *See Harris Cty. Flood Control Dist. v. PG & E Tex. Pipeline, L.P.*, 35 S.W.3d 772, 773 (Tex. App.—Houston [1st Dist.] 2000, pet. dism'd w.o.j.) ("When the trial court has jurisdiction over any claim against a governmental entity, the court should deny that entity's plea to the jurisdiction."), *abrogated on other grounds by City of Houston v. Northwood Mun. Util. Dist. No. 1*, 74 S.W.3d 183, 184–85 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (per curiam); *Blum v. Restland of Dallas, Inc.*, 971 S.W.2d 546, 549 (Tex. App.—Dallas 1997, pet. denied) (because trial court had jurisdiction over at least part of case, overruling cross-point that asserted such court erred in denying plea to jurisdiction). More recently, the Texas Supreme Court held that "[a] trial court is not required to deny an otherwise meritorious plea to the jurisdiction . . . based on a jurisdictional challenge concerning some claims because the trial court has jurisdiction over other claims." *Thomas v. Long*, 207 S.W.3d 334, 339 (Tex. 2006); *see also id.* at 338 ("[I]t is proper for a trial court to dismiss claims over which it does not have subject matter jurisdiction but retain claims in the same case over which it has jurisdiction.").[9]

Amador interprets the phrase "not required" in *Long* to mean that a trial court may, in its discretion, deny a plea to the jurisdiction as to one claim based on the fact that it has jurisdiction over another claim. Since *Long*, however, the Supreme Court

---

[9] The *Long* court also disapproved of the First Court of Appeals' decision in *PG & E* to the extent *PG & E* had held otherwise. *See id.* at 339.

has made clear that "a plaintiff must demonstrate that the court has jurisdiction over . . . each of his claims; the court must dismiss those claims (and only those claims) over which it lacks jurisdiction." *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 152–53 (Tex. 2012); *see also id.* at 153 ("[T]he court must assess standing plaintiff by plaintiff, claim by claim."). Accordingly, we reject Amador's interpretation of *Long*.

In short, Amador's petition affirmatively establishes that the City is immune with respect to her fraudulent inducement, DTPA, and negligence claims. Thus, she need not be allowed an opportunity to amend her petition with respect to these claims. *Miranda*, 133 S.W.3d at 227. We affirm the district court's order granting the City's plea to the jurisdiction insofar as that order dismissed these non-contract claims.

**D.  Declaratory Judgment Claim**

Amador's petition also requested a declaration that the subject contract "be declared void or voidable at her election due to the City fraudulently inducing her into the contract." *See* CIV. PRAC. & REM. §§ 37.001–.011 (Uniform Declaratory Judgments Act). Amador's purpose in asserting this claim is to relieve her from the obligation of making prospective loan payments. Her second issue urges that the City is not immune from her Uniform Declaratory Judgments Act (UDJA) claim even it is immune from her breach of contract claim.

As an initial matter, Amador's UDJA claim, which seeks to void the contract, appears inconsistent with her claim for damages resulting from the City's breach of the contract. *See Sharifi v. Steen Automotive, LLC*, 370 S.W.3d 126, 149 (Tex. App.—Dallas 2012, no pet.) ("Remedies are inconsistent when one of the remedies results from affirming the transaction and the other results from disaffirming the transaction."). However, Amador may simultaneously pursue both claims at this stage of the litigation. *Cf. id.* ("A party is entitled to sue and seek damages on alternative theories but is not entitled to recover on both theories." (citation and internal quotation marks omitted)). Accordingly, our determination that the district court possesses jurisdiction over Amador's breach of contract claim does not moot our consideration of whether the court also has jurisdiction over her UDJA claim. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that . . . addresses every issue raised and necessary to final disposition of the appeal.").

Amador contends that "[p]rivate parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority," *Texas Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002) (plurality op.), and that "[a] party can maintain a suit to determine its rights without legislative permission," *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 404 (Tex. 1997), *superseded by statute on other grounds as stated in Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 593 (Tex. 2001); *see also City of Seagoville v.*

*Lytle*, 227 S.W.3d 401, 410 (Tex. App.—Dallas 2007, no pet.) ("Texas courts distinguish suits to determine a party's right against a governmental unit from a suit seeking damages.").[10]

More recently, the Texas Supreme Court examined the intersection of the foregoing principles with the doctrine of governmental immunity, holding that such immunity (i) bars suits for retrospective money relief but (ii) does not preclude prospective injunctive remedies in official capacity suits against government actors who violate statutory or constitutional provisions. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 368–69 (Tex. 2009).[11] To fall within the "ultra vires" exception set forth in (ii) above, a suit "cannot be brought against the state, which retains its immunity, but must be brought against the state actors in their official capacity." *Heinrich*, 284 S.W.3d at 373; *see also Southwestern Bell Telephone, L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015) ("For the ultra vires exception to immunity to apply, it must be proved that the state actor either failed to perform a ministerial task or acted

---

[10] In *Lytle*, we also said that "[a] declaratory judgment action against the government seeking a declaration of a party's rights and status under a statute is not barred by governmental immunity." *Id.* This statement was subsequently contradicted by the Texas Supreme Court's decision in *City of El Paso v. Heinrich*, 284 S.W.3d 366, 368–69 (Tex. 2009), which we discuss below. *See also City of McKinney v. Hank's Restaurant Grp., L.P.*, 412 S.W.3d 102, 111–112 (Tex. App.—Dallas 2013, no pet.) (discussing such contradiction).

[11] *See also Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 393 (Tex. 2011) ("In *Heinrich*, the Court affirmed the rule that suits for declaratory or injunctive relief against a state official to compel compliance with statutory or constitutional provisions are not suits against the State."); *Hank's Restaurant Grp.*, 412 S.W.3d at 112 ("[I]mmunity does not bar a suit for prospective injunctive relief against government actors in their official capacity for violating the law.").

without legal authority."). Since Amador's claims are brought against the City, not its officials in their official capacity, the ultra vires exception does not apply.

Amador also relies on *Labrado v. County of El Paso*, which declined to apply governmental immunity to a declaratory judgment action that sought to void contracts made in violation of Texas competitive bidding laws. *See* 132 S.W.3d 581, 593–94 (Tex. App.—El Paso 2004, no pet.) (noting that requests for declaratory relief "[were] not merely disguised attempts to confer jurisdiction over a breach-of-contract claim"). Unlike in this case, *Labrado* involved a statute that expressly waived governmental immunity to enjoin performance of a contract made in violation of the foregoing laws. *See id.* (citing LOC. GOV'T. §§ 262.027(a), 262.033). In addition, at the time of the *Labrado* decision, governmental immunity was generally considered waived with respect to UDJA claims. *See* 132 S.W.3d at 592 (noting that appellee had acknowledged same). Since *Labrado*, the Texas Supreme Court has made clear that the UDJA does not contain a general waiver of governmental immunity, *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011), though the statute does provide a limited waiver in particular cases, such as suits that challenge the validity of an ordinance or statute, *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 552–53 (Tex. 2019); *Texas Dept. of Transp. v. Sefzik*, 355 S.W.3d 618, 622 (Tex. 2011); *Heinrich*, 284 S.W.3d at 373 n.6 (citing CIV. PRAC. & REM. § 37.006(b)).

In response to Amador's argument, the City notes that "governmental entities . . . generally are immune from UDJA claims seeking to void contracts." *City of New Braunfels v. Carowest Land, Ltd.*, 549 S.W.3d 163, 171 (Tex. App.—Austin 2017, pet. denied); *accord Satterfield & Pontikes Constr., Inc. v. Tex. S. Univ.*, 472 S.W.3d 426, 431–32 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *Mustang Special Util. Dist. v. Providence Vill.*, 392 S.W.3d 311, 316–17 (Tex. App.—Fort Worth 2012, no pet.); *see also City of Austin v. Util. Assocs., Inc.*, 517 S.W.3d 300, 312 (Tex. App.—Austin 2017, pet. denied) ("The Texas Supreme Court has historically regarded these immunity principles as also barring suits to cancel or nullify a contract made for the benefit of the state." (citing *W.D. Haden Co. v. Dodgen*, 158 Tex. 74, 308 S.W.2d 838, 841 (1958))). Based on these authorities, and construing Amador's pleadings liberally in her favor, *see Hayes*, 327 S.W.3d at 116, we conclude that she has not alleged a UDJA claim for which governmental immunity has been waived.

We next consider whether Amador should be given an opportunity to amend her petition. *See Miranda*, 133 S.W.3d at 226–27. As explained previously, the UDJA waives immunity in particular cases, *see Sefzik*, 355 S.W.3d at 622, and immunity also does not apply to declaratory or injunctive remedies in official capacity suits against government actors who violate statutory or constitutional provisions, *see Sawyer Tr.*, 354 S.W.3d at 393; *Heinrich*, 284 S.W.3d at 368–69. Amador's UDJA claim, as currently pled, does not foreclose the possibility that she could amend her petition

–24–

to cure the jurisdictional defect with respect to this claim. However, the City's jurisdictional plea has already notified Amador that her request for declaratory relief did not "pierce" the City's governmental immunity. Amador's amended petition, filed several months later, alleged no additional facts to support a waiver of immunity with respect to her UDJA claim. Accordingly, the district court acted appropriately in dismissing this claim. *See Sykes*, 136 S.W.3d at 639.

We affirm the district court's order granting the City's plea to the jurisdiction insofar as it dismissed Amador's UDJA claim.

### III.
### Conclusion

We affirm the district court's order granting the City's plea to the jurisdiction and dismissing Amador's claims for negligence, fraudulent inducement, and DTPA.

We likewise affirm the district court's order granting the City's plea to the jurisdiction and dismissing Amador's claim under the UDJA.

We reverse the district court's order granting the City's plea to the jurisdiction and dismissing Amador's claims for breach of contract and related attorney's fees. *See* LOC. GOV'T § 271.153(a)(3) (allowing for "reasonable and necessary attorney's fees that are equitable and just" in a breach of contract claim). We remand these claims for further proceedings consistent with this opinion.

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE

190278f.p05

–25–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

REBECCA AMADOR, Appellant

No. 05-19-00278-CV　　V.

THE CITY OF IRVING, TEXAS, Appellee

On Appeal from the 14th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-18-02425. Opinion delivered by Justice Pedersen, III. Justices Osborne and Partida-Kipness participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment granting appellee's plea to the jurisdiction with respect to (i) appellant's breach of contract claim, and (ii) appellant's claim for attorney's fees related to her breach of contract claim. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this Court's opinion.

Judgment entered this 20th day of March 2020.